

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-20-1995

# Riley v Simmons

Precedential or Non-Precedential:

Docket 94-5055

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Riley v Simmons" (1995). *1995 Decisions.* Paper 17.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/17

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 94-5055
_____


CHARLES N. RILEY; THELMA LEVINE;
DR. DONALD I. SCHIFFMAN, on behalf of
themselves and all others similarly situated

v.

TED D. SIMMONS; HENRY E. KATES; JOHN LLOYD HUCK;
STEPHEN CARLOTTI; FRED E. BROWN;
EDWARD MERRICK BULL; RAYMOND E. CARTLEDGE;
JAMES E. FERLAND; ELLEN V. FUTTER; PAUL HARDIN;
PETER HARRIS; THE ESTATE OF JOHN HARRISON KREAMER;
ROCCO J. MARANO; JOSH WESTON


        Thelma Levine, and Donald I. Schiffman,
        on behalf of the uncertified Class
        consisting of all persons, except
        Defendants, who purchased or otherwise
        beneficially acquired securities that
        were incorrectly and misleadingly
        labelled or described as annuities from
        Mutual Benefit Life Insurance Company
        during the period August 14, 1988 to
        July 15, 1991,
                        Appellants


_____


Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Docket No. 91-cv-03626)

_____


Argued:  August 8, 1994

PRESENT:  HUTCHINSON and NYGAARD, <u>Circuit Judges</u>,
and LUDWIG, <u>District Judge</u>*

(Filed January 20, 1995)

_____

_____

\* Hon. Edmund V. Ludwig, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Kenneth A. Jacobsen, Esquire
Ira Neil Richards, Esquire            (Argued)
Lisa J. Rodriguez, Esquire
Lisa Chanow Dykstra, Esquire
Chimicles, Jacobsen & Tikellis
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA  19041

              and

Daniel W. Krasner, Esquire
Peter C. Harrar, Esquire
Wolf, Haldenstein, Adler, Freeman & Herz
270 Madison Avenue
New York, NY  10016
          Attorneys for Appellants Thelma Levine and Dr.
          Donald I. Schiffman

Lawrence A. Blatte, Esquire
Rosen & Reade
757 Third Avenue
New York, NY  10017
          Attorney for Appellant Dr. Donald I. Schiffman

Steven S. Radin, Esquire              (Argued)
Joseph L. Buckley, Esquire
Paul F. Doda, Esquire
Sills, Cummis, Zuckerman, Rading, Tischman, Epstein & Gross, P.A.
One Riverfront Plaza
Newark, NJ  07102-5400
          Attorneys for Appellees Ted D. Simmons, John Lloyd
          Huck, Stephen Carlotti, Fred E. Brown, Edward Merrick
          Bull, Raymond E. Cartledge, James E. Ferland, Ellen V.
          Futter, Paul Hardin, Peter Harris, The Estate of John
          Harrison Kreamer, Rocco J. Marano and Josh Weston

Bruce E. Baldinger, Esquire
45 Route 206 South
P.O. Box 8017
Somerville, NJ  08876
          Attorney for Appellee Henry E. Kates

Deborah T. Poritz, Esquire
  Attorney General of the State of New Jersey
Sharon M. Hallanan, Esquire
  Deputy Attorney General
Hughes Justice Complex, CN 117
Trenton, NJ  08626

and

Robert L. Ritter, Esquire            (Argued)
David M. Kohane, Esquire
Cole, Schotz, Meisel, Forman & Leonard, P.A.
25 Main Street
Hackensack, NJ  07601
          Attorneys for Intervenor/Appellees, Andrew J.
          Karpinski, Acting Commissioner of Insurance of the
          State of New Jersey and Rehabilitator of Mutual Benefit
          Life Insurance Company in Rehabilitation

_____

OPINION OF THE COURT
_____


HUTCHINSON, Circuit Judge.


        Appellants, Thelma Levine ("Levine") and Donald
Schiffman ("Schiffman") (collectively "Plaintiffs"),[1] appeal an
order of the United States District Court for the District of New
Jersey dismissing their action without prejudice following the
court's decision to abstain from considering their federal
securities claims under Burford v. Sun Oil Co., 319 U.S. 315
(1943).  Plaintiffs sought relief under the federal securities
laws alleging misrepresentations that induced them to purchase
certain annuities issued by Mutual Benefit Life Insurance Company
("Mutual Benefit" or the "Company"), an insolvent insurance
company now in rehabilitation proceedings before the New Jersey

_____

[1]. Plaintiffs are the class representatives for a class
consisting of all persons, except for the former officers and
directors of Mutual Benefit Life Insurance Company ("Mutual
Benefit" or the "Company"), who purchased certain annuities,
which the class alleges were in fact securities subject to the
federal securities laws, from Mutual Benefit.

Commissioner of Insurance (the "Commissioner" or the "Rehabilitator"). The district court permitted the intervention of the Commissioner for the limited purpose of filing a motion to dismiss Plaintiffs' complaint or, in the alternative, to stay the action pending the outcome of a separate state action commenced by the Commissioner in his role as the Rehabilitator of Mutual Benefit. The district court thereafter concluded that continuation of Plaintiffs' action at this time would conflict with the ongoing state rehabilitation proceedings. It also concluded that Plaintiffs could receive "timely and adequate state court review" of all their claims, including the federal securities claims, because all of these claims were essentially grounded in fraud. From these premises, the district court determined that Burford abstention counseled against continuation of Plaintiffs' case at this time and dismissed Plaintiffs' action without prejudice subject to possible reconsideration following the completion of the Commissioner's rehabilitation efforts.

Because federal jurisdiction over one of the claims is exclusive and there is an independent basis for federal jurisdiction over the remaining claims, all of which may belong directly to the Plaintiffs, we hold that the district court erred when it concluded that there is an opportunity for timely and adequate state court review of Plaintiffs' federal securities claims. We will therefore reverse the district court's order

dismissing Plaintiffs' case without prejudice and remand for further proceedings consistent with this opinion.[2]

---

[2]. Judge Ludwig concurs in the result.

I. Factual & Procedural History

A. General Background

Mutual Benefit was established in 1845. As of July 1991, it was one of the country's largest life insurance companies, with approximately 700,000 policyholders and annuitants and assets approaching $14 billion.

Until the late 1970's Mutual Benefit was a relatively conservative institution, known as "the Tiffany of the insurance industry." In the late 1970s, and early 1980s, however, Mutual Benefit, like other insurance companies, began to expand its products beyond the traditional life insurance policy. It marketed and sold a variety of annuity contracts, including premium deferred annuities, flexible annuities and guaranteed investment contracts. It began to speculate in high-risk ventures and to unduly concentrate its holdings in real estate.

This speculation and excessive investment in real estate eventually led credit agencies to downgrade Mutual Benefit's credit rating. Thereafter, in the first half of 1991, Mutual Benefit's customers withdrew $500 million from the Company. These withdrawals were projected to reach $1 billion by the end of the year.

B.  New Jersey Rehabilitation Proceedings

On July 16, 1991, New Jersey's Attorney General, with the consent of Mutual Benefit's Board of Directors, asked the Superior Court of New Jersey, Chancery Division for Mercer County (the "state court") to place Mutual Benefit in rehabilitation under the supervision of the Commissioner.  The state court granted the request, appointed the Commissioner Rehabilitator of Mutual Benefit and vested him with all the powers available under New Jersey's version of the Uniform Insurers Liquidation Act (the "UILA"), N.J. Stat. Ann. §§ 17B:32-1 to 17B:32-30 (West 1985) (repealed 1992).  See In re Rehabilitation of Mutual Benefit Life Ins. Co., No. C-91-00109, slip op. at 2 (N.J. Super. Ct. Ch. Div. July 16, 1991) (the "Rehabilitation Order").[3]

The Rehabilitation Order granted the Commissioner exclusive title, possession to, and control over Mutual Benefit's assets.  Id. at 4.  It enjoined all persons from interfering in any way with the Commissioner in the discharge of his rehabilitation duties or in his possession of the property and assets of Mutual Benefit, including any causes of action

---

[3].  In 1992, while Mutual Benefit's Rehabilitation was ongoing, the New Jersey Legislature repealed the UILA and enacted the Life & Health Insurers Rehabilitation & Liquidation Act (the "RLA"), N.J. Stat. Ann. §§ 17B:32-31 to 17B:32-91 (West Supp. 1994).  The RLA's purpose is "the protection of the interests of insureds, claimants, creditors and the public generally" by clarifying the law, equitably apportioning any unavoidable losses, and providing a comprehensive rehabilitation and liquidation scheme.  N.J. Stat. Ann. § 17B:32-31(b) (West Supp. 1994).  The Legislature expressly made the RLA applicable to pending rehabilitation proceedings.  N.J. Stat. Ann. § 17B:32-37.

belonging to the Company.  Specifically, the Rehabilitation Order provides that:

> All officers, directors, policyholders, agents, and employees of Mutual Benefit and all other persons or entities of any nature, including but not limited to claimants, holders of annuity contracts, beneficiaries under any Mutual Benefit contract, plaintiffs or petitioners in any action against Mutual Benefit . . . having claims of any nature against Mutual Benefit including crossclaims, counterclaims and third party claims, are hereby enjoined and restrained from:
>
> * * *
>
> b.   bringing, maintaining or further prosecuting any action at law, suit in equity, special or other proceeding against Mutual Benefit, its estate in receivership or against the Commissioner and his successors in office, as Rehabilitator thereof . . . ;
>
> c.   making or executing any levy upon the property or estate of Mutual Benefit;
>
> * * *
>
> e.   interfering in any way with the Commissioner, or any successors in office, in his possession of or title to the property and assets of Mutual Benefit, or in the discharge of his duties as Rehabilitator thereof, pursuant to this Order.  All persons or entities of any nature other than the Rehabilitator, are hereby restrained from commencing any direct or indirect actions against any reinsurer of Mutual Benefit for proceeds of any reinsurance policies issued to . . . or other agreements with, Mutual Benefit.

Id. at 5-7.  On August 7, 1991, the state court entered an order continuing the Commissioner's appointment as Mutual Benefit's

Rehabilitator. In re Rehabilitation of Mutual Benefit Life Ins. Co., No. C-91-00109 (N.J. Super. Ct. Ch. Div. Aug. 7, 1991).

On March 20, 1992, the state court authorized the Commissioner to extend Mutual Benefit's $20 million executive liability policy (the "D & O Policy"). Mutual Benefit paid a $1 million premium in order to extend this policy. As partial consideration for this premium, the extended policy was construed to cover actions brought by the Commissioner against the former directors and officers of Mutual Benefit despite an exclusion in the original policy for actions by one insured against other insureds. In re Rehabilitation of Mutual Benefit Life Ins. Co., No. C-91-00109 (N.J. Super. Ct. Ch. Div. Mar. 20, 1992) (order extending indemnification and reconsidering the decision denying extension of insurance).

In late 1991, the Commissioner's financial analysis of Mutual Benefit showed that, as of June 30, 1991, the Company's assets had a going concern value that was only about 88% of its liabilities.[4] The Commissioner's report estimated the liquidation value of the Company, on a six month basis, at 55% of its liabilities.

On August 3, 1992, the Commissioner submitted a Plan of Rehabilitation to the state court. This plan (the "Rehabilitation Plan") guarantees full death, disability and

---

[4]. The Commissioner's report indicated that Mutual Benefit then had liabilities of $9.9 billion and $8.8 billion in assets. His valuation of Mutual Benefit's assets assumed that it would remain a going concern and would hold its assets for an average of five to ten years.

retirement benefits and restructures permanent life policies and other contracts into non-participating universal contracts with minimum guaranteed interest rates.  The Rehabilitation Plan also restricts withdrawals during a rehabilitation period ending December 31, 1999.  In re Rehabilitation of Mutual Benefit Life Ins. Co., No. C-91-00109, slip op. at 23-28 (N.J. Super. Ct. Ch. Div. Aug. 12, 1993).

Under the Rehabilitation Plan, policyholders would recover 88% of the present value of their July 1991 account balances.  The Plan provides an alternative opt out provision entitling policyholders to immediate payment of 55% of the value of their original account.

The state court held hearings on the Rehabilitation Plan over a four month period beginning in January 1993.  The court's opinion, issued August 12, 1993, affirms the Rehabilitation Plan in most respects.  Appeals from that order have been filed in state court.

During the rehabilitation process, the Commissioner investigated the causes of Mutual Benefit's collapse.  On July 8, 1993, the Commissioner filed a complaint in the state court on behalf of "Mutual Benefit, its policyholders, creditors and other interested parties" against thirty-eight named defendants, including many of the officers and directors who managed the Company from 1979 through 1991, Appellants' Appendix ("App.") at 449, and the Company's outside accountants, Ernst & Young.  The complaint alleges theories of recovery based on negligence, breach of fiduciary duty, fraud, waste and violations of New

Jersey's Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 to 56:8-48 (West 1989 & Supp. 1994).  In the state court action, the Commissioner seeks to recover damages for the benefit of Mutual Benefit's estate and "to recover, particularly for the benefit of Mutual Benefit's policyholders who have priority in the distribution of Mutual Benefit's assets, damages . . . which have resulted in loss to the Company and diminution in the value of the insurance policies and other investments held by some 700,000 policyholders and annuitants."  App. at 449.

The Commissioner's complaint alleges that the former directors and officers of Mutual Benefit mismanaged the Company by investing too much of the Company's assets in real estate, particularly high risk real estate projects, and by investing in leveraged buy-outs.  The complaint also alleges that the directors and officers made material misrepresentations to Mutual Benefit's policyholders and annuitants regarding the financial condition of the Company.

C.  New Jersey State Class Actions

On July 17, 1991, one day after the state court placed Mutual Benefit in rehabilitation, the first of six state class actions was filed.  The other five class actions were filed within the week, and the state court eventually consolidated all six into one action.

The state class action complaints are similar to the Commissioner's complaint.  They allege excessive investment in high-risk, non-performing real estate ventures and leveraged

buy-outs, as well as public misrepresentations concerning Mutual Benefit's financial condition.  They assert claims for fraud, negligent misrepresentation, breach of fiduciary duty, and negligence.

The various plaintiffs in the state class actions moved for class certification.  The Commissioner opposed class certification and sought dismissal of the action on the ground that the Commissioner had standing to bring the claims asserted therein and that continuation of the class action suits would impede the rehabilitation effort.

The state court denied the plaintiffs' motion for class certification in the state actions without prejudice holding that the Commissioner had a prior right to pursue these claims and satisfy them out of the $20 million D & O Policy.  The state court stayed the class actions and ruled that after the Commissioner's action was concluded, a Rehabilitation Plan approved, and all appeals exhausted, it would decide whether plaintiffs had been made whole and whether their actions should proceed as a class action, if at all.  In re Mutual Benefit Life Policyholders Action Litigation, No. L-91-5318, slip op. at 2 (N.J. Super. Ct. Jan. 5, 1993).  The state court permitted discovery to proceed only to the extent plaintiffs' efforts "[did] not require any input from the rehabilitation estate and [did] not interfere with the prior orders of the Court in the rehabilitation action."  Id. at 3.  In orders dated January 25, 1993, and June 8, 1993, respectively, the Superior Court of New Jersey, Appellate Division and the New Jersey Supreme Court

denied the plaintiffs' motions for leave to appeal the lower court's decision.

## D. The Present Case

On August 15, 1991, Plaintiffs[5] filed this federal class action suit on behalf of themselves, and all others similarly situated, against a number of officers and directors of Mutual Benefit in the district court. These same officers and directors are the defendants in the Commissioner's state court suit, as well as the state court class actions.

The Plaintiffs sought class certification on behalf of all purchasers of Mutual Benefit annuities between August 14, 1988 and July 15, 1991. Approximately 200,000 individuals fall into this category. Plaintiffs' complaint alleges that the various directors and officers joined as defendants: (1) violated sections 5 and 12(1) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C.A. §§ 77e, 77e(1) (West 1981), by failing to register Mutual Benefit's annuity products with the SEC as securities; (2) made materially false or misleading statements in the prospectuses issued in connection with the annuities in violation of section 12(2) of the Securities Act, 15 U.S.C.A. § 77e(2) (West 1981); (3) were liable as controlling persons of Mutual Benefit under section 15 of the Securities Act,

_____

[5]. The record shows that Levine and Charles Riley initially filed this suit. Schiffman subsequently filed a suit which the district court consolidated with the Levine/Riley suit. Riley is not named as a plaintiff in the amended complaint filed after consolidation of the two cases.

15 U.S.C.A. § 77o (West 1981); (4) made materially false and misleading statements about the financial strength of Mutual Benefit thereby inducing Plaintiffs to purchase the annuities in violation of section 10(b) of the Securities Exchange Act of 1934 (the "Securities Exchange Act"), 15 U.S.C.A. § 78j(b) (West 1981); and (5) violated New Jersey Statutory and common law, including the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 to 56:8-48 (West 1989 & Supp. 1994).  The Plaintiffs alleged that Mutual Benefit compiled a real estate portfolio that lacked adequate diversification; that Mutual Benefit's overall portfolio had a substantial concentration in real estate; and that Mutual Benefit made improper investments.

On August 6, 1993, the officers and directors named as defendants in this action moved to dismiss the complaint because the district court did not have subject matter jurisdiction, the Plaintiffs had failed to state a claim, and they had failed to assert their fraud claims with the particularity required.  The officers and directors also moved to dismiss the complaint on the basis of the Burford abstention doctrine or, alternatively, to stay the action until the Commissioner's action is concluded.  On August 20, 1993, the Commissioner moved to intervene in this action, and to join the officers' and directors' motion to dismiss Plaintiff's complaint on abstention grounds or to enter a stay until the conclusion of the state proceedings.

On December 13, 1993, the district court granted the Commissioner's motion to intervene[6] and dismissed the complaint, without prejudice on the basis of Burford abstention.  See Riley v. Simmons, 839 F. Supp. 1113 (D.N.J. 1993).  This timely appeal followed.


## II.   Jurisdiction & Standard of Review

We review the district court's decision to abstain for abuse of discretion, but the district court's analysis of the law on abstention is subject to de novo review.  Thus:

> "A district court has little or no discretion
> to abstain in a case that does not meet
> traditional abstention requirements.  Within
> these constraints, determination whether the
> exceptional circumstances required for
> abstention exist is left to the district
> court, and will be set aside on review only
> if the district court has abused its
> discretion."

Grode v. Mutual Fire, Marine & Inland Ins. Co., 8 F.3d 953, 957–58 (3d Cir. 1993) (quoting United Serv. Auto Ass'n v. Muir, 792 F.2d 356, 361 (3d Cir. 1986), cert. denied, 479 U.S. 1031 (1987)).

The district court had subject matter jurisdiction pursuant to section 22 of the Securities Act, 15 U.S.C.A. § 77v(a), and section 27 of the Securities Exchange Act, 15 U.S.C.A. § 78aa.  Section 27 grants the federal courts "exclusive

---

[6].  Plaintiffs appeal only the district court's decision to abstain, not its decision to permit the Commissioner to intervene in the federal court action.

jurisdiction" over any violation arising under the Securities Exchange Act.  15 U.S.C.A. § 78aa.  In the order which the Plaintiffs appeal the district court said:  "This Court will dismiss the action without prejudice as Burford abstention is appropriate."  Riley, 839 F. Supp. at 1129.  This phrasing raises a question concerning our appellate jurisdiction.  We have a duty to inquire independently into our own jurisdiction.

Under Borelli v. City of Reading, 532 F.2d 950, 951-52 (3d Cir. 1976) (per curiam), a district court order which dismisses a complaint without prejudice is generally not considered a final appealable order.  It is final and appealable, however, if the plaintiff cannot amend the complaint to remove the ground of dismissal.  Borelli, 532 F.2d at 952 (citations omitted).  The district court's decision to abstain under Burford leaves the Plaintiffs unable to amend the complaint to remove the reason for the district court's dismissal.  Moreover, a decision to abstain is necessarily "without prejudice" because it always prevents the court from proceeding to the merits.  Thus, Borelli does not apply to this case.

In Baltimore Bank for Cooperatives v. Farmers Cheese Cooperative, 583 F.2d 104 (3d Cir. 1978), we considered our appellate jurisdiction over a district court order staying an action on the basis of Burford abstention.  We noted first that the proper disposition of a case to which Burford abstention applies is a "'dismissal of the action, rather than retention of jurisdiction pending a state determination . . . .'"  Id. at 108 (citing Charles Wright, Federal Courts § 52, at 200 (1970)); see

also Erwin Chemerinsky, Federal Jurisdiction § 12.3, at 612

(1989) ("Burford abstention--abstention out of deference to

centralized state administrative proceedings--requires the

federal court to dismiss the case.").  We then went on to state:

> But the technical failure to dismiss should
> not render an ordinarily final disposition of
> the case on the basis of abstention
> unappealable.  Drexler v. Southwest Dubois
> School Corp., 504 F.2d 836, 838 (8th Cir.
> 1974) (en banc).  Such an abstention order is
> for all intents and purposes a final
> disposition of the case within the meaning of
> 28 U.S.C. § 1291 and is therefore appealable.
> Indiana State Employees Ass'n, Inc. v.
> Boehning, 511 F.2d 834 (7th Cir. 1975).

Id. at 108-09.  We explained our Baltimore Bank holding on

appellate jurisdiction in Richman Brothers Records, Inc. v. U.S.

Sprint Communications Co., 953 F.2d 1431 (3d Cir. 1991).  There

we stated:

> The teachings of Farmers Cheese are
> two-fold: administrative abstention orders,
> which completely relinquish federal
> jurisdiction by giving way to state
> administrative agencies, are final decisions
> appealable under section 1291; orders
> transferring discrete issues involving
> regulatory expertise under the doctrine of
> primary jurisdiction, by giving way to a
> federal administrative agency, are not final
> decisions appealable under section 1291.

Richman Bros. Records, Inc., 953 F.2d at 1442.  We opined:

"Generally, when a federal court abstains in deference to a state

court or regulatory agency, the abstention necessarily ends the

federal court's involvement with the suit."  Id. at 1443; see

also Chemerinsky, § 12.3, at 612 ("The effect of Burford

abstention is thus not to postpone federal court review but to prevent it entirely.").

Finally, in Carr v. American Red Cross, 17 F.3d 671, 678 (3d Cir. 1994), we held that, "where [a] dismissal of an appeal will have the practical effect of denying later appellate review of a district court's underlying order, the underlying order must be final, within the meaning of 28 U.S.C. § 1291."  In this case, if we were to determine that we lacked appellate jurisdiction, we would effectively render the district court's decision to abstain unreviewable.  Our rationale in Baltimore Bank, Richman Brothers Records, Inc., and Carr demonstrates the finality of the district court's order.  Accordingly we have appellate jurisdiction over this case under 28 U.S.C.A. § 1291 (West 1993).

### III.  Analysis

Federal courts have an obligation to exercise their jurisdiction.  Abstention, therefore, is the exception rather than the rule.  See Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 236 (1984); Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).  Moreover, Burford abstention has particular relevance to claims arising in the course of state regulation of insolvent insurance companies.  See Grode, 8 F.3d at 958; Lac D'Amiante Du Quebec, Ltee. v. American Home Assurance Co., 864 F.2d 1033, 1045 (3d Cir. 1988) ("LAQ"); cf. University of Md. v. Peat Marwick Main & Co., 923 F.2d 265, 270-71 n.6 (3d Cir. 1991) (assuming for purposes of case that

state regulation of insurance companies can provide the relevant "complex regulatory scheme" or "coherent policy with respect to a matter of substantial public concern" that are Burford prerequisites). Recognizing these principles, we examine the district court's decision to apply Burford abstention to Plaintiffs' claims, including their federal securities claims, and to dismiss this action.

The Supreme Court has summarized Burford's underlying principles as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989) ("NOPSI") (quoting Colorado River Water Conservation Dist., 424 U.S. at 814). The principles just quoted, however, fail to tell the whole story. In NOPSI, the Supreme Court also teaches us that Burford abstention calls for a two-step analysis. The first question is whether "timely and adequate state-court review" is available. Id. Only if a district court determines that such review is available, should it turn to the other issues and determine if the case before it

involves difficult questions of state law impacting on the state's public policy or whether the district court's exercise of jurisdiction would have a disruptive effect on the state's efforts to establish a coherent public policy on a matter of important state concern.

In this case, the district court emphasized the disruptive effect that the continuation of the federal action would have on the parallel state rehabilitation proceedings.  In considering whether Plaintiffs had an opportunity for "timely and adequate state court review" of their federal securities claims, the district court equated them with the common law fraud claims the Commissioner was pursuing in his state action.  It then reasoned:  "This is not a case where plaintiffs' federal claims give them an independent or separate remedy" and so concluded that the state court action provided "'timely and adequate' state court review. . . ."  Riley, 839 F. Supp. at 1127.

Plaintiffs first contend that Burford abstention is available only in cases invoking equitable remedies and that their request for class certification and a declaratory judgment is not primarily addressed to what used to be the equity side of the court.  Plaintiffs also challenge the district court's legal premise conflating the federal securities claims with the state common law fraud claims.  They argue that the district court erred in concluding that "timely and adequate state court review" of their federal securities claims is available and, accordingly, that the district court's order dismissing their action without prejudice should be reversed.  In the alternative, Plaintiffs

argue that the district court abused its discretion when it concluded that the continuation of the federal securities action would exert a disruptive effect on the state rehabilitation proceedings and interfere with the state's attempt to establish a coherent policy relating to the regulation of insolvent insurance companies.

Preliminarily, we consider Plaintiffs' argument that the district court erred in invoking Burford abstention in a case in which the primary remedy they seek is money damages. We are referred again to NOPSI and our own decision in University of Maryland. In NOPSI, the Supreme Court did indeed state that "a federal court sitting in equity must decline to interfere with" state court proceedings where Burford abstention requirements are met. See NOPSI, 491 U.S. at 361 (emphasis added). In Baltimore Bank, this Court stated:

> Burford, as we have already indicated, was an equitable action. . . . The instant litigation to recover a debt is a legal action. Traditionally, abstention has been applied only in cases involving equitable relief. The district court, however, . . . impermissibly extended abstention to a common law action.

Baltimore Bank, 583 F.2d at 111 (citation omitted). In University of Maryland, we said that Baltimore Bank was still good law in this Circuit. University of Maryland, 923 F.2d at 271.

Plaintiffs therefore argue that Burford abstention is inappropriate given this Court's statements in University of

<u>Maryland</u> and <u>Baltimore Bank</u>.  The officers and directors of

Mutual Benefit, along with the Commissioner, contend that

Plaintiffs are really seeking rescission, an equitable remedy,

and <u>Burford</u> abstention is not precluded even if it remains

available only in cases that stand in equity.[7]

<hr>

[7].  Although this panel is bound by the earlier holdings of this
Court under Internal Operating Procedure 9.1, <u>see</u> <u>Hammond v.</u>
<u>Commonwealth Mortgage Corp. of Am.</u>, 27 F.3d 52, 57 (3d Cir. 1994)
(<u>In re Hammond</u>), the comments in this footnote relating to
<u>Burford</u> abstention in non-equity cases are the opinion of the
opinion writer, not the Court.  For a contrary view, <u>see</u> Nygaard,
J., concurring.  In my opinion, it is not at all clear whether
the statement in <u>Baltimore Bank</u> restricting <u>Burford</u> abstention to
equity is a holding that survives as the law relating to <u>Burford</u>
abstention has developed or that the Supreme Court's reference in
<u>NOPSI</u> to equity and our reference to it in <u>University of Maryland</u>
and <u>Baltimore Bank</u> are anything but <u>dicta</u>.  Furthermore,
substantial confusion continues as to when an action brought
under the federal system's unification of law and equity is
primarily equitable.  Considering these uncertainties, I would be
inclined to follow the lead of another panel of this Court faced
with the same issue.  It decided:

> Decisional authority remains inconclusive as
> to whether <u>Burford</u> abstention may be ordered
> <u>only</u> in cases of an equitable nature, or
> whether, as [we stated in <u>LAQ</u>], the
> distinction between legal and equitable
> relief is not dispositive in abstention
> cases.  Hence, we are hesitant to sustain [a]
> claim that the district court's abstention
> order should be reversed, relying solely on
> the ground that [Plaintiffs'] seek[] money
> damages, rather than either declaratory or
> injunctive relief.

<u>General Glass Indus. Corp. v. Monsour Medical Found.</u>, 973 F.2d
197, 202 (3d Cir. 1992) (emphasis added).  The <u>Baltimore Bank</u>
issue concerning <u>Burford</u>'s restriction to suits in equity was not
initially addressed by the parties, but the Court asked for and
received supplemental briefing on it.  This strengthens my
reluctance to decide the case on the ground that <u>Burford</u>
abstention is limited to cases primarily equitable in nature.  My
conclusion that <u>Burford</u> abstention does not apply to this case
for other reasons makes it unnecessary for me to delve into

In this case, however, we believe the key to <u>Burford</u> abstention is whether the Plaintiffs have an opportunity for "timely and adequate state court review" of their claims. Where a state court lacks jurisdiction over a plaintiff's claim, <u>Burford</u> abstention is clearly inappropriate because there can be no opportunity for "timely and adequate state court review" of a claim that a court has no power to decide. <u>See</u> <u>University of Maryland</u>, 923 F.2d at 274 (abstention is inappropriate because it would deprive plaintiffs "of a forum and of all recourse to have their claims heard on the merits").

Section 27 of the Securities Exchange Act gives federal district courts exclusive jurisdiction over claims arising under that Act. <u>See</u> 15 U.S.C.A. § 78aa.[8] In <u>Evans v. Dale</u>, 896 F.2d 975 (5th Cir. 1990), the court of appeals reversed a district court order, which dismissed on <u>Burford</u> principles security

(..continued)
issues involving arcane distinctions between law and equity and their continuing relevance to abstention doctrine. I note, however, that section 12(1) or section 12(2) claims under the Securities Act may be brought in either law or equity. <u>See</u> Thomas Lee Hazen, <u>The Law of Securities Regulation</u> §§ 7.2, 7.5, at 276, 301 (2d ed. 1990); <u>see</u> <u>also</u> <u>infra</u> note 11 (discussing rescissionary nature of section 12 of the Security Act).

[8]. Section 27 provides:

> The district courts of the United States . . . shall have <u>exclusive</u> jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability of duty created by this chapter or the rules and regulations thereunder.

15 U.S.C.A. § 78aa (emphasis added).

claims arising in the course of a domestic relations dispute. Evans brought a federal suit, which was ancillary to her divorce action against her husband Dale, seeking recovery under federal securities law for misrepresentations Dale had made about corporate stock during a state court proceeding for division of property. Evans, 896 F.2d at 976-77. The district court relied on Burford, heavily emphasizing the reluctance of federal courts to intervene in issues of state domestic relations law. The court of appeals held that abstention was inappropriate because the plaintiff's federal securities claims were subject to exclusive federal jurisdiction and so could not be considered in any state court. Id. at 978-79; see also Finkielstain v. Seidel, 857 F.2d 893, 896 (2d Cir. 1988) (holding Burford abstention inapplicable to action seeking relief for alleged violations of the Securities Exchange Act within the exclusive jurisdiction of the federal courts).

The Securities Exchange Act gives federal courts exclusive jurisdiction over Plaintiffs' Rule 10b-5 claim and necessarily deprives New Jersey state courts of jurisdiction over that claim.[9] Like the courts in Evans and Finkielstain, we will

---

[9]. Rule 10b-5 implements section 10(b) of the Securities Exchange Act. It provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,

reverse the district court's decision to abstain on Burford principles because there is no possibility of "timely and adequate state court review" of Plaintiffs' Rule 10b(5) claim, which Congress has chosen to commit exclusively to the federal courts.[10]

The district court concluded that all of Plaintiffs' claims would receive "timely and adequate state court review" because Plaintiffs' security claims were essentially the equivalent of the common law fraud claims being pursued by the Commissioner in the state court action. The district court stated: "No further relief can be obtained by asserting the

(..continued)

> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5 (1993).

[10]. Considering the impact such actions may have on procedures for the rehabilitation or orderly liquidation of insolvent insurance companies, which Congress has entrusted exclusively to the states, see 15 U.S.C.A. §§ 1011, 1012 (West 1976), and the crushing impact that an insurance company's inability to pay the claims of its insureds and other creditors may have, one could wonder about the wisdom of this doctrine, but we believe it is beyond this panel's power to change it.

section 10(b)-5 claim vis-a-vis the Rehabilitator's state court common law fraud claim." Riley, 839 F. Supp. at 1127.

It is clear, however, that Rule 10b-5 establishes a cause of action distinct from one for common law fraud. See, e.g., Marcel Kahan, Games, Lies & Securities Fraud, 67 N.Y.U. L. Rev. 750, 757, 760-61 (1992). Indeed, the legislative history of the Securities Exchange Act and its text show that Congress concluded that the common law remedies of deceit, fraud and misrepresentation were inadequate and unfair to the average investor. Consequently it made significant changes in the means by which liability for those common law torts could be established. The district court's reliance on the surface similarity of the Rule 10b-5 remedy to common law remedies for fraud and misrepresentation highlights the district court's failure to consider all of Plaintiffs' securities claims, particularly those based on sections 5 and 12(1) of the Securities Act. Section 5 of the Securities Act requires a seller of securities to file a registration statement before offering a security for sale unless the securities offered come within statutorily defined exemptions. See 15 U.S.C.A. § 77e. Section 12(1) provides that a purchaser of a security that is not registered in accord with section 5 has a civil action for damages against the seller of the security. Id. § 77l(1).[11]

---

[11]. Section 12(1) is essentially a rescissionary remedy. It provides that the person who sells the security is liable to the purchaser for:

> the consideration paid for such security with
> interest thereon, less the amount of any

This cause of action and the remedy it affords are clearly different from common law actions.

In reaching its determination that Plaintiffs had an opportunity for "timely and adequate state court review" of their claims, the district court may have also conflated any injury the putative common law fraud of the officers and directors caused the purchasers of the variable annuities with any injury that fraud caused Mutual Benefit and all of its policyholders to suffer.[12] We have held that Burford abstention is inappropriate where a plaintiff asserts "claims which are broader than, and different from, the Commissioner's. . . ." General Glass, 973 F.2d at 204. We have also acknowledged that individual stockholders may have a distinct and independent cause of action

(..continued)
income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C.A. § 77l(1). Similarly, Plaintiffs' remedy under section 12(2) of the Securities Act is essentially a remedy of rescission. 15 U.S.C.A. § 77l(2). That section provides a remedy for material misstatements or omissions made in connection with the sale or offer for sale of a security.

[12]. We use the subjunctive "may have" because any difference between the injury the purchasers of these annuities suffered and the injuries the company or its policyholders face depends on whether the annuities are securities subject to federal securities law or a type of insurance policy subject to state insurance law. That question, which involves the merits of the Plaintiffs' federal and state claims, is yet to be answered. If it is answered in the negative, there would then appear to be an adequate opportunity for review of the remaining common law claims in the courts of New Jersey, in which case the district court would have to consider whether it should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367(c)(3) over the Plaintiffs' common law claims.

from that of the corporation or other stockholders premised on misrepresentations by officers and directors of a corporation. Hayes v. Gross, 982 F.2d 104, 108 (3d Cir. 1992) ("[A]n individual stockholder may sue officers and directors based on an injury distinct from the injury to the corporation and the indirect injury to stockholders generally."). Plaintiffs' federal securities claims, like their common law claims, arise out of the direct losses they suffered as a result of purchases of annuities by Plaintiffs and other persons similarly situated to Plaintiffs. Their claim is for losses they directly suffered, not as stockholders derivatively injured by the directors' or officers' failure to meet their fiduciary duties to the corporation. The district court erred when it concluded that Plaintiffs' federal securities claims were the same as those being pursued by the Commissioner in the state action.[13] We hold that Plaintiffs' claims, if they turn out to be viable federal securities claims, are distinct from those the Commissioner now presses in the pending state action.[14] Therefore, if the

---

[13]. Similar analysis might demonstrate that Plaintiffs' fraud claims under both New Jersey common law and the New Jersey Consumer Fraud Act are personal to Plaintiffs. Thus, on remand if the federal claims survive on the merits, the district court may also have to determine whether Plaintiffs' state law cause of action for fraud encompasses an injury distinct from any injury suffered by Mutual Benefit.

[14]. The district court's opinion indicates that the Commissioner was permitted to intervene for the limited purpose of arguing in favor of Burford abstention. A closer look at its opinion, however, indicates it also concluded that the Commissioner would have standing to prosecute the Plaintiffs' federal securities claims under New Jersey law. See Riley, 839 F. Supp. at 1127. In reaching this conclusion, the district court relied on N.J.

annuities Plaintiffs bought are securities, they cannot receive

timely and adequate state court review as required by Burford.

We do not rely entirely on any general proposition that

"[a]bstention is also inappropriate . . . [where] a federal issue

is involved which [gives] the district court independent federal

jurisdiction." Grode, 8 F.3d at 960. Taken in its most

expansive sense, that proposition would preclude abstention no

matter how important the state interest or how severe the federal

interference with the state's scheme for resolution of problems

Congress has seen fit to entrust to the states. Nevertheless,

(..continued)
Stat. Ann. § 17B:32-50(a)(15) and In re Integrity Insurance Co.,
573 A.2d 928 (N.J. Super. A.D. 1990). The parties have not
argued the propriety of the district court's intervention
decision on this appeal and therefore we are unwilling to
consider that issue. We note, however, statements in In re
Integrity Insurance Co. indicating that the Commissioner only has
standing to pursue derivative, as opposed to direct, claims of
creditors and policyholders. See In re Integrity Insurance Co.,
573 A.2d at 935 (distinguishing between claims "on behalf of"
creditors and policyholders and claims "belonging to" creditors
and policyholders). As explained, Plaintiffs' claims seem to be
direct claims that are personal in nature at least to the extent
that they seek damages under the federal securities laws.

Section 17B:32-50(a)(15) gives the Commissioner the power to
prosecute actions on "behalf of" policyholders as opposed to
those "belonging to" policyholders. N.J. Stat. Ann.
§ 17B:32-50(a)(15) (West Supp. 1994). The statute expressly
gives the Commissioner standing to pursue such actions when he
acts in liquidation proceedings. It does not mention
rehabilitation proceedings. Compare N.J. Stat. Ann §§ 17B:32-41,
17B:32-42 (providing grounds under which Commissioner may
petition state court to place insurance company in rehabilitation
proceedings) and id. § 17B:32-42 (providing that Commissioner
shall be appointed rehabilitator and outlining responsibilities
of Commissioner in rehabilitation capacity) with id. §§ 17B:32-
45, 17B:32-50 (providing grounds under which Commissioner may
petition state court to place insurance company in liquidation).

the circumstances present in this case, in which the district court may ultimately decide that the annuities Plaintiffs purchased are not securities offered in violation of federal securities law, should lead the district court to proceed cautiously.

We recognize the Commissioner's argument that Plaintiffs, by pursuing this action, can put themselves in a position superior to Mutual Benefit's other policyholders and claimants who are wholly dependent on the rehabilitation proceedings. There is some force to the Commissioner's contention that allowing this action to continue is likely to interfere with the process of marshalling the assets of Mutual Benefit and equitably distributing them among all persons who hold claims against the Company. In this respect, both the Commissioner and the district court focus on the $20 million fund the D & O Policy created. They contend that Plaintiffs' action may remove from Mutual Benefit's estate funds needed for equitable apportionment among the claims asserted in the state rehabilitation proceedings. The Commissioner asserts in his brief: "Any judgment for [Plaintiffs] would wipe out the limits of the $20 million D & O Policy, and would leave the Commissioner without insurance coverage for the claims of the other 500,000 policyholders not represented by Plaintiffs' proposed class." Brief for Intervenor/Appellee at 37. He thus concludes that Plaintiffs' ability to proceed in a federal forum promotes a race to the courthouse that can detrimentally affect Mutual Benefit and its other policyholders.

The officers and directors, as defendants, join this argument, adding their voices to a chorus raising the inequity that may result from allowing Plaintiffs to compete in a race for collection of the D & O Policy's limited fund after the Commissioner has already spent $1 million of Mutual Benefit's dollars to ensure that the proceeds of this policy would be available to its estate. Both the Commissioner and the defendants also argue that continuation of this action, no matter what its outcome, will diminish the funds available to Mutual Benefit and its policyholders because the D & O Policy limits will be reduced under policy provisions for their use in paying defendants' legal fees.

We, like the district court, are troubled by diversion of funds from Mutual Benefit and its policyholders to the cost of litigation that benefits only one class of persons injured by the acts of the Company's officers and directors. A remedy for that problem, however, is beyond the power of this panel under existing statutory law and what we believe is binding Supreme Court precedent and circuit procedure. Governing case law seems to us to make it clear that mere interference with the Commissioner's ability to marshall the Company's assets cannot justify Burford abstention over claims exclusively subject to federal jurisdiction.

Moreover, if the D & O Policy is an essential source of estate funds, this case appears analogous to Hayes v. Gross, where this Court rejected a similar argument when it was advanced by the Resolution Trust Company (the "RTC"). In Hayes, the

plaintiff was a purchaser of the stock of a failed savings association and sought to recover damages from officers and directors of the association for violations of the federal securities laws. Hayes, 982 F.2d at 105. While the savings association was in receivership RTC asked to have the action dismissed, arguing that the claim arose out of various officers' and directors' mismanagement of the savings association, and that it was therefore a derivative, as opposed to a direct claim. Id. RTC also argued that continuation of the action would impair its ability to comply with its statutory mandate to maximize the assets of the savings association. Id. at 109.

We considered whether the continuation of plaintiff's case affected RTC's prosecution of a mismanagement suit on behalf of the savings association against the officers and directors. We stated:

> Allowing plaintiff to pursue this claim will neither prejudice the corporation and its other stockholders nor permit a double recovery for the same injury. If [the savings association] has claims against its officers and directors arising from their mismanagement, the RTC is free to pursue those claims for the ultimate benefit of the creditors and stockholders of [the savings association]. Assuming solvency on the part of the defendants, as we must on this record, we see no conflict between plaintiff's interest and those of the creditors and other stockholders. Assuming insolvency on the part of the defendants, a conflict between plaintiff and [the savings association], as creditors of the defendants, may arise, but the RTC has advanced no persuasive reason why, in such circumstances, plaintiff and [the savings association] should not be treated as any other creditors competing for a limited pool of resources.

> As far as the potential for double recovery is concerned, plaintiff has alleged that the market price of [the savings association's] stock when he purchased it was far in excess of what it would have been had the market been evaluating the failing institution that defendants knew [it] to be. Plaintiff will have to prove this allegation. When he attempts to do so, it may be that he will attempt to recover compensation to which the corporation is justly entitled. <u>If so, the district court will be required to evaluate the prospect of double recovery in the specific fact context presented by plaintiff's case on damages.</u> It will suffice for present purposes to conclude, as we do, that double recovery is not inherent in plaintiff's theory of the case and, accordingly, that recovery without duplication is possible.

<u>Id.</u> at 108-109 (footnotes omitted) (emphasis added). Specifically, we also noted, that "[i]f both plaintiff and the RTC prove[d] entitled to judgment, there [would] be no inequity in requiring defendants to satisfy both judgments." <u>Id.</u> at 109.

The assumption of ultimate solvency may be quite optimistic, but in this case, as in <u>Hayes</u>, we are constrained to act within the record and this record does not show that the D & O Policy is essential to the rehabilitation of Mutual Benefit. We see nothing on the face of this record that supports the Commissioner's conclusion that the D & O Policy is the only asset available for satisfaction of a judgment against the various officers and directors who are defendants. Similarly, in <u>University of Maryland</u>, we rejected this argument when it was advanced in support of <u>Burford</u> abstention. There, concluding

that the policyholders' claims were direct, as opposed to

derivative, we held that Burford abstention was inappropriate.

Hayes, and University of Maryland, compel this panel to

hold that it is inappropriate to dismiss a plaintiff's action

solely because collection of a judgment, if obtained, might

reduce the assets of an insolvent insurance company's estate.[15]

The Commissioner's argument may support a conclusion that

continuation of the federal action is likely to disrupt "'state

efforts to establish a coherent policy with respect to a matter

of substantial public concern,'" but as we have stated throughout

this opinion this is insufficient to justify Burford abstention

when there is no opportunity for "timely and adequate state court

[15]. This principle was acknowledged by The United States Court
of Appeals for the Fifth Circuit in rejecting the application of
Burford abstention to plaintiff's claims in Evans v. Dale:

> By deciding the federal securities fraud
> issues asserted here, the district court will
> not usurp any part of Texas domestic
> relations law. It is true that the outcome
> of the exclusively federal issue may affect
> the relative value of property distributions
> which will be made by the Texas court and may
> even require a redistribution of that
> property. However, the decision regarding
> distribution or redistribution under Texas
> domestic relations law will remain entirely
> within the authority of the Texas court. If
> the district court orders disgorgement of the
> profits made by Dale in stock transactions
> subsequent to the divorce or takes other
> remedial action allowed by the federal
> securities laws, it will do so under its
> exclusive jurisdiction vested pursuant to
> those laws.

Evans, 896 F.2d at 979.

review" of Plaintiffs' claims. NOPSI, 491 U.S. at 261 (quoting Colorado River Water Conservation Dist., 424 U.S. at 814).

Plaintiffs' claims in this case, like those in Hayes and University of Maryland, appear to be direct claims for their own injuries. Their federal security claims are substantially different than, and distinct from, the claims advanced by the Commissioner in the state action. To the extent that Plaintiffs have asserted valid securities claims,[16] it seems clear to us that those claims are direct, rather than derivative. As we have already noted, however, the problem created by the lack of an opportunity for state court review would be eliminated if Plaintiffs' annuities are not "securities" under federal law. Moreover, if Plaintiffs do recover under the federal securities laws, they should no longer be entitled to share in the funds of the Company, including any funds realized from the Commissioner's action against the directors and officers in state court. Therefore, as we noted in Hayes, it would be appropriate for the district court, in determining damages, to adjust the Plaintiffs' remedy in this action to account for any potential for double recovery in the state rehabilitation proceeding. See Hayes, 982 F.2d at 109.

IV.

---

[16]. As we have previously noted, the district court did not reach the merits of Plaintiffs' securities claims, nor do we. See supra notes 12 and 13.

In conclusion, we hold that Burford abstention is precluded when a state court has no jurisdiction over a plaintiff's direct as opposed to derivative claims. When a plaintiff presses a direct claim within the jurisdiction of a federal court, there is no basis for Burford abstention, if the plaintiff cannot receive timely or adequate state court review of the claim. Here, it is clear that Plaintiffs' 10b-5 claim falls exclusively within the province of the federal courts. Moreover, as to their claims under sections 5, 12(1), 12(2), and 15 of the Securities Act, it is equally apparent that there is no opportunity for timely state court review, as these claims are personal to the Plaintiffs. Because the district court erred when it conflated Plaintiffs' federal securities claims with the common law fraud claims of the Commissioner, and in concluding that Plaintiffs had an opportunity for timely and adequate state court review of their claims, we will reverse the district court's order dismissing Plaintiffs' claims under the Burford abstention doctrine, and remand for further proceedings consistent with this opinion.

Riley v. Simmons, No. 94-5055

NYGAARD, Circuit Judge, concurring.

I agree with the opinion of the court that the district court erred when it applied Burford abstention. I also believe, alternatively, that Burford abstention is simply not available when legal, rather than equitable or declaratory, relief is sought.

In Baltimore Bank for Coops. v. Farmers Cheese Coop., 583 F.2d 104, 111 (3d Cir. 1978), a bank filed a diversity action seeking monetary recovery for milk it had sold and delivered to the defendant. The district court abstained under Burford, but we reversed, holding that Burford abstention is not available in legal, common law actions. We stated:

> Burford . . . was an equitable action to restrain the Texas Railroad Commission. The instant litigation to recover a debt is a legal action. Traditionally, abstention has been applied only in cases involving equitable relief. The district court, however, . . . impermissibly extended abstention to a common law action.

Id.

A decade later, we broadened the scope of Burford abstention in Lac D'Amiante du Quebec, Ltee. v. American Home Assur. Co., 864 F.2d 1033 (3d Cir. 1988). In that case, an asbestos manufacturer sued its insurer for a declaratory judgment rather than money damages. The insurer, as here, was in state rehabilitation proceedings. We noted that Burford relied on the traditional discretion of a federal equity court to enforce or

protect legal rights, stating the issue as "whether Burford abstention is appropriate in a case . . . where the court is not being asked to provide equitable relief." Id. at 1044. We held that abstention was available in the limited context of declaratory relief, opining:

> [T]he central concern animating the Court's decision to abstain in Burford -- preventing the state regulatory scheme from needless disruption -- simply does not depend on whether the relief sought by the plaintiff is properly characterized as legal or equitable. If the relief sought is legal and the disruption is of the extent and character suggesting that Burford abstention is appropriate, a refusal to abstain simply because the federal court is not sitting in equity makes no sense.

Id. Notwithstanding this broad dictum, however, we concluded "that Burford abstention is appropriate in cases seeking declaratory relief, even though such relief does not fall within the traditional boundaries of equity jurisdiction." Id. at 1045. In a footnote, we specifically noted that, because declaratory relief was created by a 1934 act of Congress, it was not a common law action and our holding did not conflict with Baltimore Bank. Id. at 1045 n.14.

The next year, the Supreme Court decided New Orleans Pub. Serv., Inc. v. Council of New Orleans ("NOPSI"), 491 U.S. 350, 109 S. Ct. 2506 (1989). Although the Court did not decide the issue of whether Burford abstention is available in non-equitable actions, it did state in dictum that "[w]here timely and adequate state-court review is available, a federal court

sitting _in equity_ must decline to interfere with the proceedings or orders of state administrative agencies . . . ." _Id._ at 361, 109 S. Ct. at 2514 (emphasis added).[17]  Thus, while _NOPSI_ is certainly not dispositive, it lends no support whatsoever to the proposition that _Burford_ abstention should be available in cases where the relief sought is money damages.

This court reviewed the issue of _Burford_ abstention in legal actions in _University of Md. v. Peat Marwick Main & Co.,_ 923 F.2d 265, 271-72 (3d Cir. 1991).  There, a federal class action was filed against the independent auditors of a failed insurer in rehabilitation proceedings.  The suit alleged that the auditors had made false and misleading statements about the insurer's financial condition, as a result plaintiffs bought insurance policies that later turned out to be no good.  We relied on both _NOPSI_ and _Baltimore Bank_ and reiterated our earlier holding that _Burford_ abstention is simply not available in a case where the plaintiff seeks only monetary damages.  _Id._ at 271-72.  We stated:

> [T]he Supreme Court [in _NOPSI_] stated, admittedly in dictum, that _Burford_ abstention applies to a federal court sitting _in equity_. Without reading too much into this dictum, we believe . . . that _NOPSI_ generally cautions lower federal courts not to extend _Burford_ abstention beyond proper bounds.  Here, unlike _Burford_ and the other Supreme Court

---

[17].  Based on the above dictum, the Court of Appeals for the First Circuit has held that post-_NOPSI_ _Burford_ abstention is very narrow and is not available in legal actions.  _See_ _Fragoso v. Lopez,_ 991 F.2d 878, 882 (1st Cir. 1993).

> cases involving Burford doctrine, the action
> was at law, not in equity, and sought
> monetary damages.

Id. at 271 (quotation marks and internal citations omitted).  The opinion then dealt with the insurance commissioner's argument that Lac D'Amiante had eliminated the limitation of Burford abstention to equitable actions:

> [Lac D'Amiante], however, predated NOPSI, and
> the Supreme Court in NOPSI has given no
> indication that the distinction between legal
> and equitable relief has been diluted.
> Furthermore, all that [Lac D'Amiante] holds
> is that Burford may be extended to cases
> seeking declaratory relief -- which is in
> many ways similar to injunctive relief -- not
> that it may be extended to cases for monetary
> damages. . . .  [Lac D'Amiante] did not alter
> the principle established in Baltimore Bank.8
>
> 8Indeed, under our Internal Operating
> Procedures, the [Lac D'Amiante] panel could
> not have overruled the holding of a prior
> published opinion in this Circuit.

Id. at 272 & n.8 (citation omitted).

Thus, as of 1991, the law in this circuit was clear: Burford abstention was only available where equitable or declaratory relief was sought.  Abstention in legal actions was barred by Baltimore Bank and University of Maryland.

In General Glass Indus. Corp. v. Monsour Medical Foundation, 973 F.2d 197 (3d Cir. 1992), however, a panel of this court reached the opposite conclusion.  Relying on what it perceived to be inconclusive authority, the General Glass panel

refused to rule out abstention merely because the relief sought consisted of monetary damages.  Id. at 202.

I think General Glass was incorrectly decided, containing two analytical errors.  First, the panel relied on the dictum in Lac D'Amiante which indicated that "the distinction between legal and equitable relief is not dispositive in abstention cases," id., but did not cite or discuss the clear holding of Baltimore Bank that forbids abstention when money damages are sought.[18]  Second, it relied on Tafflin v. Levitt, 493 U.S. 455, 110 S. Ct. 792 (1990), in which the Supreme Court affirmed a district court judgment applying Burford abstention in a RICO action seeking money damages.  Notably, however, the Court's grant of certiorari in that case was limited solely to whether state courts have concurrent jurisdiction over RICO claims.  Id. at 458, 110 S. Ct. at 794.  Tafflin therefore had no precedential value on the issue before the General Glass panel.  Thus, because the binding decisional law never was inconclusive in the first place, the General Glass panel's reluctance to apply the clear holdings of Baltimore Bank and University of Maryland was not justified.

> In any event,
> Internal Operating Procedure 9.1 sets forth
> our judicial tradition that no panel of this
> court may overrule the published holding of a

---

[18].  The opinion did mention University of Maryland, but only in a "but see" citation, without any analysis, in which it opined that the University of Maryland court only "intimat[ed]" that Burford abstention is unavailable in legal actions.  Id.

previous panel.  Only the in banc court may do that.  To the extent that the decision of a later panel conflicts with existing circuit precedent, we are bound by the earlier, not the later, decision.

United States v. Monaco, 23 F.3d 793, 803 (3d Cir. 1994). Accordingly, because General Glass flatly conflicts with both Baltimore Bank and University of Maryland, neither of which have been overruled,  I am respectfully forced to conclude that General Glass was wrongly decided and never was the law of this circuit.

Applying Baltimore Bank and University of Maryland to this case, it is clear that Burford abstention is not available. Although the complaint does plead rescission, admittedly an equitable remedy, the plaintiffs have not sued the only party capable of giving rescission: Mutual Benefit itself.  Instead, they have sued only the individual officers and directors, who, if found liable, can respond only in damages.  I take no delight in this conclusion.  Although the abstention doctrines have their root in equity cases, I am aware of no reason why abstention should not equally be available where monetary damages are sought.  See Lac D'Amiante, 864 F.2d at 1044.  As one leading treatise puts the matter:

> Considerations of federalism are at the heart of abstention.  These considerations are too important to be made dependent on ancient distinctions about the powers of the several courts at Westminster Hall, and the ability of a federal court to defer to a state in a proper case ought not depend on whether the case is thought of as "legal" or "equitable."

17A Charles A. Wright, et al., Federal Practice and Procedure §
4241, at 17–18 (1988).

Delightful or not, however, our circuit's law is clear,
and until and unless the in banc court or the Supreme Court
overrules Baltimore Bank, we remain bound by it.