**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2591
_____

RARITAN BAYKEEPER, D/B/A NY/NJ BAYKEEPER;
EDISON WETLANDS ASSOCIATION, INC.,

Appellants

v.

NL INDUSTRIES, INC.; NL ENVIRONMENTAL
MANAGEMENT SERVICES, INC.;
SAYREVILLE ECONOMIC AND REDEVELOPMENT
AGENCY; O'NEILL PROPERTIES GROUP, L.P.;
SAYREVILLE SEAPORT ASSOCIATES, L.P.; COUNTY
OF MIDDLESEX; STATE OF NEW JERSEY
DEPARTMENT OF TRANSPORTATION; STEPHEN
DILTS, in his official capacity as Commissioner of State of
New Jersey Department of Transportation;  BERNARD
JAMES, in his official capacity as Regional Director of
Operations for the Central Region of State of New Jersey
Department of Transportation; NEW JERSEY TURNPIKE
AUTHORITY; DIANE GUTIERREZ-SCACCETTI, in her
official capacity as Executive Director of New Jersey
Turnpike Authority; NEW JERSEY  DEPARTMENT OF
ENVIRONMENTAL PROTECTION; MARK MAURIELLO
_____

On Appeal from the United States District Court

for the District of New Jersey
(D.C. Civil No. 3-09-cv-04117)
District Judge:  Honorable Joel A. Pisano
_____

Argued March 8, 2011

Before:  SCIRICA, AMBRO and VANASKIE,
*Circuit Judges*

(Opinion Filed: October 3, 2011)
_____

Bruce J. Terris, Esq. (Argued)
Terris, Pravlik & Millian
1121 12th Street, N.W.
Washington, DC 20005-4632

*Counsel for Appellants*


Christopher R. Gibson, Esq. (Argued)
Archer & Greiner
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033

*Counsel for Appellees NL Industries, Inc. & NL
Environmental Management Services, Inc.*

James L. Beausoleil, Jr., Esq.
Alexander D. Bono, Esq. (Argued)
Ryan E. Borneman, Esq.

Duane Morris
30 South 17th Street
United Plaza
Philadelphia, PA 19103-4196

*Counsel for Appellees O'Neill Properties Group, L.P. &*
*Sayreville Seaport Associates, L.P.*

Robert G. Kenny, Esq. (Argued)
Hoagland, Longo, Moran, Dunst & Doukas
40 Paterson Street
P.O. Box 480, Room 301
New Brunswick, NJ 08903

*Counsel for Appellee Sayreville Economic & Redevelopment*
*Agency*

Dale L. Lessne, Esq.
Office of Attorney General of New Jersey
Department of Law and Public Safety
P.O. Box 114
25 Market Street
Richard J. Hughes Complex
Trenton, NJ 08625

*Counsel for Appellees Stephen Dilts, Bernard James & State*
*of New Jersey Department of Transportation*

Thomas A. Abbate, Esq.
DeCotiis, Fitzpatrick, Cole & Wisler
500 Frank West Burr Boulevard
Glenpointe Centre West, Suite 31
Teaneck, NJ 07666

*Counsel for Appellees New Jersey Turnpike Authority &*
*Diane Gutierrez-Scaccetti*

Edward Devine, Esq.
Office of Attorney General of New Jersey
Division of Law
P.O. Box 097
25 Market Street
Richard J. Hughes Justice Complex
Trenton, NJ 08625

*Counsel for Appellees New Jersey Department of*
*Environmental Protection & Mark Mauriello*

Patrick J. Bradshaw, Esq.
Kelso & Bradshaw
132 Hamilton Street
P.O. Box 1208
New Brunswick, NJ 08903

*Counsel for Appellee County of Middlesex*

_____

OPINION OF THE COURT
_____


VANASKIE, *Circuit Judge*.

Raritan Baykeeper and the Edison Wetlands Association (collectively, "Raritan Baykeeper") brought this

4

suit under the Resource Conservation and Recovery Act ("RCRA") and the Clean Water Act ("CWA") to bring about the remediation of contaminated sediments in the Raritan River. The District Court, citing the involvement and expertise of the New Jersey Department of Environmental Protection, dismissed the action on abstention grounds. We conclude that this case does not call for abstention, and we will vacate the judgment of the District Court.

I.

The following facts derive from the complaint, whose allegations we presume true for the purposes of this appeal. From the 1930s until 1982, NL Industries ("NL") manufactured titanium dioxide pigments on a 440-acre plot of land ("the site") surrounded on three sides by the Raritan River. Although NL ceased its operations on the site in 1982, it retained ownership of the property and leased portions of it to other companies, who manufactured sulfuric acid on the site. NL continued to own the site until 2005, when the Sayreville Economic and Redevelopment Agency ("SERA") acquired the site by eminent domain. SERA chose O'Neill Properties Group, L.P. ("O'Neill") as the site's developer and O'Neill, in turn, formed Sayreville Seaport Associates, L.P. ("SSA") to purchase and redevelop the site. SERA, O'Neill, SSA, and the County of Middlesex entered into an agreement controlling the sale of the site. Although the agreement made SSA responsible for most environmental issues at the site, it provided that NL would retain liability for contamination of sediments in the Raritan River. The agreement does not, however, call for any remediation of the sediments.

Prior to 2005, when NL still owned the site, the company began to address the site's environmental issues. In 1988, NL undertook an environmental investigation of the site pursuant to New Jersey's Environmental Cleanup Responsibility Act, which has since been renamed the Industrial Site Recovery Act. NL also entered into an administrative consent order with the New Jersey Department of Environmental Protection ("NJDEP"), requiring NL to investigate contamination at the site and to perform remediation of certain areas. Pursuant to the order, NL collected sediment samples from the Raritan River in 2000 and 2002 and analyzed them for contaminants. Sediments from the portions of the river both adjacent to and downstream from the site showed elevated levels of arsenic, copper, lead, and zinc. NL concluded, however, that sources other than the site, such as nearby roadways, were contributing to the pollution of river sediments.

NL submitted its analysis of river sediments to NJDEP. In 2004, NJDEP issued a letter in which the agency agreed that off-site sources were contributing to the contamination of river sediments and that "any remedial actions conducted in this area of the river should be part of a regional approach." (A. 117.) NJDEP did not require NL to undertake any further investigation or remediation. To date, no such "regional approach" has been proposed, let alone commenced. In 2009, however, the United States Environmental Protection Agency ("EPA") ordered remediation of river sediments upstream from the site.

Shortly after the EPA action, Raritan Baykeeper brought this suit against NL, SERA, SSA, O'Neill, and an array of government officials and agencies. The complaint

6

asserted claims under Section 7002(a)(1)(B) of the RCRA, 42 U.S.C. § 6972(a)(1)(B), and Section 505 of the CWA, 33 U.S.C. § 1365(a)(1). Each statute authorizes citizen suits except in certain enumerated circumstances, none of which applies here. Among other things, Raritan Baykeeper sought injunctive relief requiring the Defendants to remediate sediments in the Raritan River. The Defendants moved to dismiss on abstention grounds. The District Court granted the motion, concluding that abstention was appropriate under the primary jurisdiction doctrine and under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). Raritan Baykeeper now appeals.

## II.

The District Court had jurisdiction under the citizen suit provisions of the RCRA and CWA, 42 U.S.C. § 6972(a)(1)(B) and 33 U.S.C. § 1365(a)(1), respectively. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's decision to abstain on primary jurisdiction grounds or under *Burford* for abuse of discretion. *See P.R. Maritime Shipping Auth. v. Valley Freight Sys.*, 856 F.2d 546, 549 (3d Cir. 1988) (primary jurisdiction); *Riley v. Simmons*, 45 F.3d 764, 770 (3d Cir. 1995) (*Burford*). "We review the district court's decision to abstain for abuse of discretion, but the district court's analysis of the law on abstention is subject to *de novo* review." *Riley*, 45 F.3d at 770.

## A.

Before we address the parties' arguments on appeal, we write briefly on the statutory background of this case. The RCRA and the CWA both authorize citizen suits as a way to

7

ensure their rigorous enforcement. Raritan Baykeeper brought this suit under the RCRA provision authorizing suits

> against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

42 U.S.C. § 6972(a)(1)(B). The RCRA, however, does not permit citizen suits under certain circumstances. For example, a citizen suit cannot proceed if the Administrator of the EPA or a state is diligently prosecuting an enforcement action through formal proceedings. *See id.* §§ 6972(b)(2)(B) & (C).

> Similarly, the CWA authorizes citizen suits

> against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the

8

> Administrator or a State with respect to such a standard or limitation.

33 U.S.C. § 1365(a)(1). And, like the RCRA, the CWA does not allow a citizen suit if the EPA Administrator or a state is diligently prosecuting an enforcement action. *See id.* § 1365(b)(1)(B).

The parties agree that none of the enumerated exceptions to the citizen suit provisions in the RCRA or the CWA applies here. It is therefore undisputed that the District Court had jurisdiction over this matter. We must decide whether the District Court erred by declining to hear the case for reasons other than those enumerated in the RCRA and CWA.

## B.

We will first address Raritan Baykeeper's argument that the District Court should not have abstained on primary jurisdiction grounds. Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). "Abstention, therefore, is the exception rather than the rule." *Riley*, 45 F.3d at 771. The doctrine of primary jurisdiction

> applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of

> such issues to the administrative body for its views.

*United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956).

While "[n]o fixed formula exists for applying the doctrine of primary jurisdiction," *id.*, the parties and the District Court have relied on a four-factor test for determining whether a court should abstain on primary jurisdiction grounds. Those factors are:

> (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made.

*Global Naps, Inc. v. Bell Atl.-N.J.*, 287 F. Supp. 2d 532, 549 (D.N.J. 2003).

These factors weigh against the application of primary jurisdiction. The first factor focuses on the competence of the court and the agency to address the matter. While NJDEP has expertise in environmental matters, federal courts are nonetheless competent to decide cases such as the one before us. Congress decided as much when it wrote the RCRA and CWA to authorize citizen suits in federal courts. When "the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its

10

responsibility." *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1104 (3d Cir. 1995) (quoting *Elkin v. Bell Tel. Co. of Pa.*, 420 A.2d 371, 377 (Pa. 1980)).

The second factor, whether the matter is particularly within the discretion of the agency, also weighs against applying primary jurisdiction. Although NJDEP generally has discretion over environmental matters, neither the RCRA nor the CWA charges NJDEP with enforcing those particular statutes. Indeed, each statute authorizes federal courts to address environmental issues. Accordingly, this matter is not *particularly* within the discretion of NJDEP.

Third, there is minimal risk of inconsistent rulings. NJDEP's most recent comment concerning the remediation of river sediments came in 2004, when the agency notified NL that the company need not conduct any further investigation or remediation efforts at that time and stated that a "regional approach" should govern remediation of the Raritan River. (A. 117.) Since then, NJDEP has not issued any rulings on the matter. In light of agency inaction with respect to the river sediments over the last several years, we see little danger of a court-ordered remediation conflicting with NJDEP directives. Moreover, in the event the District Court orders remediation that imposes an additional burden on NL, "a more stringent remediation standard . . . is not a reason to invoke the primary jurisdiction doctrine." *Interfaith Cmty. Org. Inc. v. PPG Indus.*, 702 F. Supp. 2d 295, 312 (D.N.J. 2010) ("*PPG Industries*").

The final factor, whether application to the agency has already been made, favors NL because NJDEP has previously considered contamination of sediments in the Raritan River. The agency, however, last spoke on the issue in 2004, and no

action has been taken since.  Accordingly, this single factor cannot outweigh the others that disfavor abstention on primary jurisdiction grounds.

NL relies on two cases where district courts deemed primary jurisdiction abstention appropriate.  Both of those cases, however, presented distinguishable factual scenarios.  In *Friends of Santa Fe County v. LAC Minerals, Inc.*, 892 F. Supp. 1333 (D.N.M 1995) ("*Santa Fe*"), the state environmental agency conducted extensive hearings and issued a permit that required the defendants to undertake specific investigative and remediation efforts.  *Id.* at 1347-48. The plaintiffs actively participated in the hearings.  *Id.* at 1347.  The plaintiffs, not satisfied with the agency's permitting decision, then brought suit in federal court, alleging violations of the RCRA and CWA.  The district court abstained on both *Burford* and primary jurisdiction grounds, explaining that the plaintiffs' action was "little more than an indirect collateral attack on the [agency's] . . . adjudication and its present regulatory course."  *Id.* at 1348.  The court also expressed concern that granting the plaintiffs the relief they sought would subject the defendants to conflicting sets of obligations:  one from the court and the other from the state agency. *Id.* at 1350.

Similarly, in *Davies v. National Cooperative Refinery Association*, 963 F. Supp. 990 (D. Kan. 1997), the plaintiffs sought relief that would have directly conflicted with a state environmental agency action.  The defendant and the agency reached a settlement agreement in which the defendant expressly agreed to continue pumping an aquifer as part of its remediation efforts.  *Id.* at 998.  The plaintiffs, however, alleged that the pumping contributed to pollution of their

12

property. *Id.* A court order enjoining the pumping would have conflicted with the settlement agreement.

Here, by contrast, Raritan Baykeeper's suit does not amount to a "collateral attack" on an NJDEP decision, nor does it seek a remedy that necessarily conflicts with any agency order. Accordingly, this is not one of those exceptional cases that calls for primary jurisdiction abstention.

## C.

Next, we address Raritan Baykeeper's contention that the District Court abused its discretion by abstaining on *Burford* principles. "*Burford* is concerned with protecting complex state administrative processes from undue federal interference." *New Orleans Pub. Serv. Inc. v. Council of New Orleans*, 491 U.S. 350, 362 (1989) ("*NOPSI*"). "The purpose of *Burford* is to avoid federal intrusion into matters of local concern and which are within the special competence of local courts." *Hi Tech Trans, LLC v. New Jersey*, 382 F.3d 295, 303-04 (3d Cir. 2004) (internal quotation marks omitted). The "*Burford* doctrine" provides that

> [w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of

state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*NOPSI*, 491 U.S. at 361 (quoting *Colo. River Conservation Dist.*, 424 U.S. at 813).

We have explained that a court must engage in a "two-step analysis" when deciding whether to abstain under *Burford*. *Riley*, 45 F.3d at 771. The first step is to determine "whether timely and adequate state-court review is available." *Id.* (internal quotation marks omitted). Only if the answer to the question is in the affirmative may a court then consider whether "the case before it involves difficult questions of state law impacting on the state's public policy or whether the district court's exercise of jurisdiction would have a disruptive effect on the state's efforts to establish a coherent public policy on a matter of important state concern." *Id.*

We doubt that Raritan Baykeeper could obtain timely and adequate state court review. Raritan Baykeeper argues, and the Defendants do not dispute, that this action could not have been brought in state court because federal courts have exclusive jurisdiction over RCRA and CWA citizen suits. This view accords with that of most other courts to have considered the question. *See, e.g.*, *Chico Serv. Station, Inc. v. Sol P.R. Ltd.*, 633 F.3d 20, 31 (1st Cir. 2011) (collecting cases concluding that federal courts have exclusive jurisdiction over RCRA citizen suits); *Natural Res. Def. Council v. U.S. Envtl. Prot. Agency*, 542 F.3d 1235, 1242 (9th Cir. 2008) (holding that federal district courts have exclusive jurisdiction over citizen suits against the EPA Administrator).

14

The parties do dispute, however, whether New Jersey state law provides adequate and timely review of Raritan Baykeeper's claims. The District Court agreed with the Defendants and concluded that New Jersey's Environmental Rights Act, N.J.S.A. 2A:35A-1 *et seq.*, supplies a functionally equivalent cause of action. If this statute creates a cause of action that is "essentially the equivalent" of the RCRA and CWA, Raritan Baykeeper could sue under it to obtain timely and adequate state court review. *See Riley*, 45 F.3d at 773-75 (concluding that timely and adequate state court review of a Securities Exchange Act claim is not available because a common law fraud action is not equivalent to a federal securities action). The Environmental Rights Act has a citizen suit provision that states:

> a. Any person may commence a civil action in a court of competent jurisdiction against any other person alleged to be in violation of any statute, regulation or ordinance which is designed to prevent or minimize pollution, impairment or destruction of the environment. The action may be for injunctive or other equitable relief to compel compliance with a statute, regulation or ordinance, or to assess civil penalties for the violation as provided by law. The action may be commenced upon an allegation that a person is in violation, either continuously or intermittently, of a statute, regulation or ordinance, and that there is a likelihood that the violation will recur in the future.

15

> b. *Except in those instances where the conduct complained of constitutes a violation of a statute, regulation or ordinance which establishes a more specific standard for the control of pollution, impairment or destruction of the environment*, any person may commence a civil action in any court of competent jurisdiction for declaratory and equitable relief against any other person for the protection of the environment, or the interest of the public therein, from pollution, impairment or destruction.

N.J.S.A. 2A:35A-4 (emphasis added). Here, the RCRA and CWA establish the specific standards that Raritan Baykeeper alleges the Defendants violated. Accordingly, the Environmental Rights Act does not authorize a state court action to enforce rights under the RCRA and CWA. Raritan Baykeeper therefore cannot obtain adequate and timely state court review of its claims.

Even if we concluded that Raritan Baykeeper could obtain adequate and timely state court review, we would not find any disruption of New Jersey's efforts to establish a coherent policy on a matter of public concern. The Defendants point to New Jersey's policy on the redevelopment of brownfield sites, but it is not apparent, at this early stage in the litigation, exactly how the remediation of sediments in the Raritan River would necessarily interfere with such a policy.[1] The Defendants also cite the supposed

---

[1] We are confident that, on remand, the District Court can take appropriate action to avoid or minimize any

16

state policy favoring a "regional approach" to remediation, but this "policy" derives from a single comment in the 2004 NJDEP letter to NL regarding remediation of the site. Moreover, to date, no such regional approach exists. "The mere fact that a state agency has taken some action on the waste at issue here does not make [a court's] subsequent involvement a disruptive intrusion into the state's capacity to create a coherent policy." *PPG Industries*, 702 F. Supp. 2d at 309.

D.

In sum, we conclude that neither primary jurisdiction nor the *Burford* doctrine calls for abstention in this case. This outcome is consistent with the decisions of our sister circuits. The First Circuit explained that federal courts must "exercise great caution in considering abstention," and that "the circumstances justifying abstention will be exceedingly rare," because declining to hear a case for a reason not enumerated in the RCRA "would substitute our judgment for that of Congress about the correct balance between respect for state administrative processes and the need for consistent and timely enforcement of RCRA." *Chico Serv. Station, Inc.*, 633 F.3d at 31, 32. Similarly, the Seventh Circuit observed that, while "there may be room for applying the doctrines of abstention or primary jurisdiction . . . in cases in which a state has a formal administrative proceeding in progress that the citizens' suit would disrupt," abstention in RCRA ordinarily would amount to "an end run around the RCRA." *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 619 (7th Cir. 1998).

---

interference with any state policy on redevelopment of the NL site.

17

The same logic also applies to CWA actions, since that statute similarly provides for citizen suits except under specific, enumerated circumstances, none of which apply here.

Raritan Baykeeper asks us to go a step further and hold that primary jurisdiction and *Burford* abstention never apply to RCRA and CWA actions. Like our sister circuits, we decline to impose such a general rule. As Judge Posner noted in *PMC, Inc.*, 151 F.3d at 619, abstention might be appropriate in cases with heightened state involvement as evidenced by "a formal administrative proceeding in process that the citizens' suit would disrupt." But such a case is truly the exception, not the rule, and is not present here.

### III.

For the foregoing reasons, we will vacate the judgment of the District Court and remand for further proceedings consistent with this opinion.