IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE DEPARTMENT OF NATURAL RESOURCES & ENVIRONMENTAL CONTROL, | : | C.A. No. S18M-06-002 RFS |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MOUNTAIRE FARMS OF DELAWARE, INC., | : | |
| | : | |
| Defendant. | : | |

ORDER STAYING ACTION

DATE SUBMITTED: December 7, 2019

DATE DECIDED: March 29, 2019

Devera B. Scott, Esquire and William J. Kassab, Esquire, Department of Justice, attorneys for Plaintiff

F. Michael Parkowski, Esquire, Michael W. Arrington, Esquire, Michael W. Teichman, Esquire, and Elio Battista, Jr., Esquire, Parkowski, Guerke & Swayze, P.A., attorneys for defendant

Chase T. Brockstedt, Esquire, Baird Mandalas Brockstedt, LLC, attorneys for the Cuppels Intervenors

Thomas C. Crumplar, Esquire, and Raeann Warner, Esquire, Jacobs & Crumplar, P.A., attorneys for the Balback Intervenors

Stokes, J.

The State of Delaware Department of Natural Resources and Environmental Control ("DNREC") has filed this action against Mountaire Farms of Delaware, Inc. ("Mountaire") in connection with the poultry plant Mountaire operates in Millsboro, Delaware. DNREC also submitted for the Court's approval a Consent Decree it entered into with Mountaire which resolves various issues the complaint raises. This is my decision staying this action pending the outcome of a related lawsuit filed in the United States District Court in and for the District of Delaware ("District Court").

Two separate groups have sought to intervene in this matter. The first group consists of Gary Cuppels, Anna-Marie Cuppels and other unnamed property owners ("the Cuppels"). The other group is made up of Joseph Balback, Joan Balback, a non-profit and other community members and property owners in the vicinity of the poultry plant at issue ("the Balbacks"). Collectively, these two groups are referenced as "the potential intervenors."

On March 27, 2018, the Balbacks filed a federal notice of intent to sue Mountaire for alleged ongoing violations of the Resource Conservation and Recovery Act ("RCRA"), maintaining that Mountaire's violations have caused long-standing and widespread groundwater contamination that creates an imminent and substantial endangerment to public health and the environment.

On May 2, 2018, the Cuppels also filed a federal notice of intent to sue for RCRA violations.

On June 4, 2018, DNREC filed an enforcement action against Mountaire in District Court. This action alleged violations of RCRA and the Clean Water Act ("CWA"). The Cuppels

1

have been allowed to intervene in the District Court case.[1] The Court is unaware of whether the Balbacks have filed to intervene in that action.

Also on June 4, 2018, DNREC filed the current action in Superior Court. The basic allegations in the complaint are as follows.

In order to dispose of its waste from the manufacturing process, Mountaire sprays the effluent on certain lands and applies sludge to other areas. The disposal is governed by Delaware's Environmental Control Act as found in 7 *Del. C.*, ch. 60; wastewater regulations;[2] and two permits, a spray permit and a land application permit.[3] Mountaire's wastewater treatment facility failed in August, 2017. Mountaire thereafter illegally disposed of the effluents from its manufacturing process. In September, 2017, DNREC learned of the failure of the wastewater treatment facility. DNREC began to investigate the failure and developed a corrective action plan. DNREC enforced the applicable laws through a Notice of Violation and monitored Mountaire's compliance with the requirements of the Notice of Violation.

The complaint alleges more specifically as follows. Mountaire's actions resulted in violations of the spray permit effluent limitations for total nitrogen; the spray permit effluent limitations for five-day biochemical oxygen demand; the spray permit effluent limitations for

---

[1]*State of Delaware Department of Natural Resources and Environmental Control v. Mountaire Farms of Delaware, Inc.*, C.A. No. 18-838, Noreika, J. (D. Del. Mar. 25, 2019).

[2]The specific regulations are contained in Delaware's *Regulations Governing the Design, Installation and Operation of On-Site Wastewater Treatment and Disposal Systems*, codified at 7 Del. Admin. C. § 7101 and *Delaware's Guidance and Regulations Governing the Land Treatment of Wastes*, 7 Del. Admin. C. § 7103.

[3] The permits are identified as the Spray Irrigation Permit DEN No. 359191, most recently renewed on July 31, 2017 (the "spray permit") and Agricultural Permit No. AGU 1402-S-03, most recently renewed on June 1, 2014 (the "land application permit").

2

total suspended solids; the spray permit effluent limitations for fecal coliform; and the spray permit effluent requirements for residual chlorine. Furthermore, the operation of the wastewater treatment facility and application of effluent onto the spray fields has caused groundwater to exceed drinking water standards in violation of the spray permit. In this count of the complaint, DNREC alleges the permit prohibits Mountaire's operation of the wastewater treatment plant and spray irrigation system "from causing the quality of Delaware's groundwater resources to be in violation of applicable Federal and State drinking water standards."[4] DNREC further alleges Mountaire failed to submit a timely plan of corrective action; it failed to maintain and operate all structures, pipelines, systems and equipment in order to comply with the spray permit; it did not timely notify DNREC of its non-compliance or of a system bypass; it failed to report complete and accurate information as required by the spray permit; it illegally applied sludge to the land; it failed to plant an appropriate crop or ground cover after applying sludge; it applied sludge without first marking buffer zones; and it failed to notify DNREC before commencing the sludge application.

DNREC asserts it is legislatively authorized to exercise police power to protect the health, safety and welfare of the citizens of Delaware. DNREC maintains that pursuant to its authority, DNREC enforces numerous environmental statutes and regulations, including the federal delegation of administration of RCRA and the CWA.[5] DNREC seeks the imposition of appropriate civil penalties as well as an order directing and authorizing enforcement pursuant to 7 *Del. C.* § 6005 for the violations identified in the complaint and any future violations, and any

---

[4]Complaint, ¶ 47.

[5]Complaint, ¶3.

other relief the Court may deem just and proper.

I conclude that this complaint invokes RCRA and CWA issues.

As noted above, DNREC and Mountaire entered into a Consent Decree in connection with the filing of the complaint in this action. The key points of this Consent Decree are listed below.

1) Mountaire will be unable to maintain full compliance with the land application and spray permits until long-term improvements to the wastewater treatment facility are completed. Mountaire has implemented interim measures to fix the problems. It is in the best interests of the parties and the environment that other interim and long-term measures be implemented as soon as possible.

2) Although Mountaire does not concede its operations or actions are a cause of such, nitrate levels of wells in the area are elevated. Mountaire, without admitting liability, agrees to provide a central water supply system or, in the alternative, deep water supply wells, to the residents in the area.

3) It is stated, in pertinent part:

DNREC has brought lawsuits against Mountaire in respect of: ... (iv) discharge of pollutants into waters of the State and United States through surface water and hydrogeologic connection of Mountaire-contaminated groundwater with Swan Creek, Indian River and Indian River Bay...."[6]

4) The parties agree it is best to solve the issues "without any admission of fact or law, including without limitation any admission of potential violations of Delaware or federal law or

---

[6]Consent Decree at ¶ 23.

4

regulations...."[7]

5) Mountaire must make all reasonable efforts to implement or complete in a timely manner interim measures to improve the wastewater treatment facility in anticipation of its upgrade; to upgrade the wastewater treatment plant and to submit a construction application;[8] and to provide an alternative water supply.[9] Mountaire must pay civil penalties. Any violations of this Consent Decree may result in the immediate issuance of a cease and desist order and further enforcement actions.

6) The effective date of the Consent Decree is the date when Court signs off on it.[10]

7) Significant to this Court's decision in this matter are the following paragraphs of the Consent Decree:

61. Mountaire's satisfaction of its obligations under this Consent Decree shall resolve and release Mountaire of any and all liability of Mountaire to DNREC for its failure in the past and for the period from entry of this Consent Decree until the system upgrade is completed to meet the effluent limitations and other conditions contained in the Spray Permit and to satisfy the compliance requirements in the Land Application Permits, including but not limited to any such liability that might be imposed for violations alleged in the NOV [Notice of Violation], such liability that might be imposed for alleged contribution to the past or present handling, storage, treatment, transportation or disposal of a solid waste that may present an imminent and substantial endangerment to health or the environment, and such liability that might be imposed as a result of alleged disposal into an "open dump" as defined under 7 *Del.C.* § 6002(35) and 42 U.S.C. § 6403(14), and

---

[7]*Id.* at 8.

[8]Mountaire and DNREC argue that at this point in time, the potential intervenors may participate in this process and provide their input on matters.

[9]Mountaire will need to seek a permit from the Public Service Commission to provide this water supply and again, Mountaire and DNREC argue the potential intervenors will be able to have their say in that matter.

[10]Consent Decree ¶86.

such liability that might be imposed as a result of discharge of pollutants into waters of the State and Unites [sic] States through surface water and hydrogeologic connection of Mountaire contaminated groundwater with Swan Creek, Indian River, and Indian River Bay.

62. During the time from the entry of this Consent Decree until Mountaire applies for an amended Spray Permit as required under Paragraph 35 of this Consent Decree, Mountaire shall, during such period, undertake all practical and reasonable measures to operate the WWTF [wastewater treatment facility] in a manner that achieves results that approach full compliance with the Spray Permit. Mountaire shall further attempt to minimize the impact that the construction of the WWTF system upgrade has on interim operations of the WWTF. Provided Mountaire undertakes the practical and reasonable measures required under this Paragraph 62, Mountaire shall not have any liability for failing to meet the conditions of the Spray Permit prior to the date it submits said application for an amendment to the Spray Permit as required under Paragraph 35.

63. To the extent Mountaire takes required actions identified in this Consent Decree, the release of liability set forth in Paragraph 61 above shall extend through the time this Consent Decree is terminated pursuant to Section XX. This Paragraph is not intended nor shall it be construed to limit the provisions of Paragraph 61 above.

Paragraph 61, if approved and found controlling, could be found to relieve Mountaire of liability under RCRA and CWA and could ultimately render the District Court case moot, something Mountaire admittedly hopes will occur.[11]

The potential intervenors sought to bring their RCRA and CWA claims in District Court because they claim Mountaire's operations have polluted their drinking water. They do not agree the pollution is limited to the August-September, 2017 time frame and events, but, instead, contend the pollution has been ongoing for many years. The potential intervenors cannot sue in a Delaware court because federal courts have exclusive jurisdiction over RCRA and CWA citizen suits.[12] Furthermore, Delaware does not have a statute which provides functionally equivalent

---

[11]Transcript of November 20, 2018, Proceedings at 78.

[12]*Baykeeper v. NL Industries, Inc.*, 660 F.3d 686, 693 (3rd Cir. 2011).

causes of action.

An order staying this action while the District Court action proceeds promotes justice by allowing the potential intervenors to be heard on their claims. It also promotes judicial economy, as is explained below.

DNREC maintains that the Court should sign the Consent Decree without any review.[13] Its basis for this position is as follows:

> DNREC is tasked with enforcing Chapter 60. They do have the expertise, as acknowledged by the General Assembly, to formulate a consent decree or a path forward. And DNREC would request that Your Honor acknowledge or defer to DNREC's expertise that this consent decree for the limited purpose of resolving the 2017 catastrophic upset....[14]

If the Consent Decree addressed only the violations of Delaware's laws, then the Court may be willing to defer to the Secretary's expertise. However, this case does not present that situation at all. Instead, the complaint raises RCRA and CWA issues and the Consent Decree seeks to render moot the RCRA and CWA claims which the potential intervenors otherwise could pursue in District Court. The Court is unwilling under the facts of this case to rubber stamp the Consent Decree. If it were to allow this matter to proceed, it most likely would review the Consent Decree to determine whether it is fair, reasonable, consistent with the applicable statutes' goals, and in the public interest.[15] Such a review would involve a hearing where the

---

[13]Transcript of November 20, 2018, Proceedings at 74.

[14]*Id.* at 74-75.

[15]*See New Jersey Department of Environmental Protection v. Exxon Mobil Corporation*, 183 A.3d 289, 304-09 (N.J. Super. 2015), *aff'd* 181 A.3d 257 (N.J. Super. App. Div. 2018), *cert. den.* 185 A.3d 875 (N.J. 2018). The parties have not briefed that standard of review and asked they be allowed to do so if the Court decides to consider the Consent Decree. However, based on the Court's research, that appears to be the appropriate standard to employ.

parties present witnesses and evidence. In the end, the Court could reject the Consent Decree because of problems with the RCRA and CWA claims. If that scenario played out, then a substantial amount of time and resources will have been wasted. On the other hand, the situation where the District Court considers, in the first instance, the potential intervenors' rights in relation to their RCRA and CWA claims avoids that wasteful scenario.

The intervention issue in this Court substantially complicates matters while no such problems exist in the District Court. DNREC and Mountaire have argued that Cuppels and Balback have no right to intervene because the action before the Court is an enforcement action only and 7 *Del.C.*, ch. 60 does not provide any third party with the right to participate in an enforcement action. If it were the case that this pending action and Consent Decree were limited to an enforcement action only, then the Court would be hard-pressed to allow the potential intervenors to participate. However, DNREC has invoked RCRA and the CWA issues in the complaint and paragraph 61 of the Consent Decree may be determined to release Mountaire from any RCRA and CWA liability. This action, if allowed to proceed, could limit or even prevent the potential intervenors from being heard on the RCRA and CWA issues. The potential intervenors have represented that they would litigate any such conclusion in District Court[16] in order to thwart that outcome. Such unnecessary and prolonged litigation will be prevented by allowing the District Court to hear its case first.

The negative aspect of staying this case is the strong likelihood that Mountaire will not immediately commence upgrading the wastewater treatment facilities and providing a water system to nearby landowners.

---

[16]Transcript of November 20, 2018, Proceedings at 41-42; 44-47.

This Court's authority to grant a stay is "'incident to the inherent power of a court to exercise its discretion to control the disposition of actions on its docket in order to promote economies of time and effort for the court, litigants, and counsel.'"[17] In the situation at hand, a refusal to enter the stay would increase the amount of litigation in these cases and would complicate proceedings, both here and in the District Court. The resolution of the District Court case will allow for the RCRA and CWA issues to be addressed and resolved rather than foreclosed to the potential intervenors. That outcome overbalances the potential delay in upgrading the wastewater treatment facility and providing a water system to nearby landowners.

In conclusion, in the interest of justice, I order that this action is stayed pending the outcome of the District Court case. [18]

IT IS SO ORDERED.

---

[17]*Spiro v. Vions Technology Inc.*, 2014 WL 1245032, *11 (Del. Ch. Mar. 24, 2014) (quoting *Joseph v. Shell Oil Co.*, 498 A.2d 1117, 1123 (Del. Ch. 1985)).

[18]This Court will provide the District Court with a copy of this decision.