

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-16-2008

# Matusow v. Trans Cty Title Agcy

Precedential or Non-Precedential: Precedential

Docket No. 07-2148

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Matusow v. Trans Cty Title Agcy" (2008). *2008 Decisions.* Paper 281.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/281

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2148
_____

JACQUELINE MATUSOW,

*Appellant*

v.

TRANS-COUNTY TITLE AGENCY, LLC, JUN CHAN
KIM, BERGEN COUNTY SHERIFF, ARTHUR C.
LINDERMAN, LYLE ROSENBAUM, and ROSE
ROSENBAUM,

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 06-5723)
District Judge: The Honorable Faith S. Hochberg

_____

Submitted pursuant to Third Circuit LAR 34.1(a)
March 28, 2008

Before:  McKEE, RENDELL and TASHIMA[*], *Circuit Judges*

(Filed: October 16, 2008 )

James R. Radmore
Law Office of James R. Radmore, P.C.
Two Penn Center, Suite 312
1500 JFK Boulevard
Philadelphia, PA 19102
*Counsel for Appellant*

Rajan Patel
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, NY 10977
*Counsel for Appellees Trans-County Title Agency, LLC and Jun Chan Kim*

Thomas Quirico
74 Central Avenue
Hackensack, NJ 07601
*Counsel for Appellee Bergen County Sheriff*

Arthur C. Linderman
190 Main Street, Suite 304
Hackensack, NJ 07601
*Attorney Pro Se*

---

[*]     The Honorable A. Wallace Tashima, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

Lyle Rosenbaum
200 Winston Tower Dr., Apt. 318
Cliffside Park, NJ 07101
*Appellee Pro Se*

Rose Rosenbaum
2706 Nassau Bend, Unit C1
Coconut Creek, FL 33066
*Appellee Pro Se*

———————

OPINION

———————

TASHIMA, *Circuit Judge*.

In this case we analyze the reach of the "domestic relations" exception to diversity jurisdiction under 28 U.S.C. § 1332. The Supreme Court has emphasized the narrowness of this exception, explaining that it "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992). Because the instant case does not involve the "issuance of a

3

divorce, alimony, or child custody decree," we hold that the District Court erred by dismissing the case for lack of subject matter jurisdiction. We further hold that abstention under either *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) or *Younger v. Harris*, 401 U.S. 37 (1971) would be inappropriate in this case.

## I. Background

Appellant Jacqueline Matusow ("Matusow") and Appellee Lyle Rosenbaum ("Lyle") married in January 1975 and separated in 1996. The Superior Court of New Jersey, Chancery Division, issued a dual judgment of divorce ("Judgment") on June 24, 1999.

The Judgment included a property separation agreement ("Agreement"). The Agreement, in relevant part, directed Matusow to "sign a deed and provide an appropriate affidavit of title transferring all of her right, title, and interest in and to . . . the former marital premises, which is known as Unit 122,

4

located at the Winston Towers Condominium." The Agreement directed Lyle to pay Matusow $2500 per month in child support for the couple's two children and $40,000[1] by way of equitable distribution. He also assumed sole responsibility for mortgages on the Winston Tower condominium ("Winston property"). In the Judgment, the court ordered Matusow and Lyle to carry out the terms of the Agreement. Matusow alleges that, in spite of the court's order, Lyle failed to pay the proceeds for equitable distribution, several child support payments, and defaulted on certain Winston property mortgages. She further avers that she failed to sign a deed transferring her interest in the Winston property to Lyle.

Bergen Commercial Bank, the lender on the Winston property, secured by a mortgage, sought foreclosure on the

---

[1]    This amount was later lowered to $39,500.

5

Winston property. A judgment was entered on April 30, 1999, but litigation continued for several more years.[2] Pursuant to a writ of execution, Appellee Bergen County Sheriff (the "Sheriff") scheduled and advertised a foreclosure sale of the Winston property for October 10, 2001. The sale, however, was postponed numerous times over the next three years. Matusow alleges that the Sheriff failed to publically advertise the date of any foreclosure sale after the first scheduled date and that, although Matusow was listed as an owner on the deed, she never received any notice of sale. On July 23, 2003, Bergen Commercial Bank assigned its interest in the foreclosure judgment to Appellee Rose Rosenbaum ("Rose"), Lyle's mother. Appellee Arthur C. Linderman ("Linderman") represented Rose throughout the transaction. On April 30, 2004,

---

[2] The delay resulted from litigation over the foreclosure of and credit due for the sale of a separate property.

6

Rose purchased the property at a foreclosure sale. Rose then sold the property to Appellee Jun Chan Kim ("Kim") on October 7, 2004. Appellee Trans-County Title Agency, LLC ("Trans-County") subsequently issued a title insurance policy to Kim.

In December 2004, Matusow assigned $38,000 of her judgment against Lyle to J. Holder, Inc. ("Holder"). Holder subsequently brought suit against Lyle, Rose, Kim, and Washington Mutual[3] in state court, claiming fraudulent transfer of the property. Matusow intervened in July 2005, but then asked the court to dismiss her complaint without prejudice in 2006. On January 23, 2006, the court dismissed her complaint: without prejudice as to Lyle, Rose, and Kim, and with prejudice as to Washington Mutual. On March 14, 2006, Holder, Kim, and Washington Mutual stipulated to a dismissal with prejudice,

---

[3] Kim took out a loan with Washington Mutual, secured by a mortgage, to pay for the Winston property.

and the court dismissed the action between those parties. The record does not reveal the result of the action between Holder, Lyle, and Rose, but Appellees represent that there is no case pending in state court.

In 2003, and continuing throughout the fraudulent-transfer-of-property litigation, a separate proceeding was underway in state court. Lyle moved the court to reduce his child support payments, and Matusow moved for enforcement of the court's prior orders directing Lyle to pay child support and equitable distribution. The court issued a final order on October 16, 2006, directing Lyle to pay sums to Holder, as Matusow's partial assignee, and Matusow.

On November 27, 2006, Matusow filed a six-count complaint in the District Court for the District of New Jersey on the basis of diversity jurisdiction. In Counts I and II, Matusow, a Pennsylvania resident, claims that Trans-County, a New Jersey

8

Corporation not domiciled in Pennsylvania, negligently issued

a title insurance policy to Kim for the Winston property and that

Trans-County violated New Jersey Statute, § 17:46B-9, which

requires a title insurance company to "conduct[] a reasonable

examination of the title" before issuing a title insurance policy.

Count III is a quiet title action against Kim, a New Jersey

resident. In Count IV, Matusow claims that the Sheriff violated

New Jersey Statute, §§ 2A:17-34 - 17-36[4] during the sale of the

---

[4]     The statutes provide:

All advertisements for the sale of real estate by virtue of executions issued out of any court of this state shall state the approximate amount of the judgment or order sought to be satisfied by the sale. When practicable, the advertisements shall state the street numbers of the real estate to be sold.

N.J. Stat. Ann. § 2A:17-34.

The sheriff making a sale under execution of the proprietary rights or shares mentioned in section 2A:17-18 of this title shall give notice, by advertisements, signed by himself, and put up in his office and by an advertisement in one of the newspapers published in this state, of the time and place of exposing such rights or shares to sale, at least 2 months before

Winston property. In Count V, Matusow contends that Linderman, a New Jersey resident, "fraudulent[ly] and improper[ly]" represented Rose in the foreclosure sale. Finally, Count VI charges Lyle, a New Jersey resident; Rose, a Florida resident; and Linderman with conspiring to defraud Matusow and others of Lyle's creditors.

By order dated April 3, 2007, the District Court dismissed all of Matusow's claims for lack of subject matter jurisdiction. The District Court held that Matusow's claims were barred by the domestic relations exception to diversity

---

the time appointed for selling the same.

N.J. Stat. Ann. § 2A:17-35.

A sheriff or other officer selling real estate by virtue of an execution may make two adjournments of the sale, and no more, to any time, not exceeding 14 calendar days for each adjournment. However, a court of competent jurisdiction may, for cause, order further adjournments.

N.J. Stat. Ann. § 2A:17-36.

subject matter jurisdiction and, alternatively, declined to exercise jurisdiction under the *Burford* and *Younger* abstention doctrines. Matusow's timely appeal followed.

We exercise jurisdiction pursuant to 28 U.S.C. § 1291. "[O]ur review of a dismissal for lack of subject matter jurisdiction is plenary." *Frett-Smith v. Vanterpool*, 511 F.3d 396, 399 (3d Cir. 2008).

## II.  The Domestic Relations Exception

While conceding that the property at the heart of her claims is the same property discussed in the Agreement, Matusow argues that her claims cannot fall within the domestic relations exception because they do not involve the issuance or modification of a divorce decree. She also contends that the domestic relations exception cannot apply to her claims against Trans-County, the Sheriff, Kim, Linderman, and Rose because they are not parties to the Judgment.

11

Appellees contend that the domestic relations exception applies because Matusow seeks a modification of a divorce decree, and because any judgment in her favor would necessarily alter the rights and obligations of Matusow and Lyle under the Judgment and Agreement.

We agree with Matusow. Because Matusow does not seek modification of the Judgment between her and Lyle, the fact that the Winston property is both subject to the Agreement and related to the present suit does not divest the federal courts of diversity jurisdiction.

The Supreme Court has long recognized a domestic relations exception to federal diversity jurisdiction. *Ankenbrandt*, 504 U.S. at 693-94. The exception has its roots in *Barber v. Barber*, 62 U.S. (21 How.) 582 (1859). In *Barber* the Court held that the enforcement of an alimony decree was within the jurisdiction of the federal courts, *id.* at 592, but also noted

12

that federal courts have no jurisdiction over suits for divorce or the allowance of alimony, *id.* at 584; *see also Marshall v. Marshall*, 547 U.S. 293, 306 (2006) (discussing the Court's holding and dicta in *Barber*). The modern rule, as expressed in *Ankenbrandt*, provides "that the domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." 504 U.S. at 704. The Court in *Marshall* recently affirmed that "only 'divorce, alimony, and child custody decrees' remain outside federal jurisdictional bounds." 547 U.S. at 308 (quoting *Ankenbrandt*, 504 U.S. at 704).[5]

---

[5] We addressed the domestic relations exception in *Solomon v. Solomon*, 516 F.2d 1018 (3d Cir. 1975), and we affirmed a dismissal for lack of subject matter jurisdiction where the plaintiff brought a suit in diversity against her ex-husband, seeking "money damages for non-support, specific enforcement of the separation agreement, and appropriate equitable relief." *Id.* at 1021. At that time, we understood the domestic relations exception to mean "that the federal courts

The plaintiff in *Ankenbrandt* sued her ex-husband and her ex-husband's girlfriend in federal court, alleging that the defendants sexually and physically abused her daughters and seeking damages. 504 U.S. at 691. The Court concluded that the plaintiff did not seek the issuance of a child custody decree; rather, she alleged that the defendants committed torts against her children. *Id.* at 704. Thus, the Court held, jurisdiction pursuant to 28 U.S.C. § 1332 was "proper in this case." *Id.*

Matusow similarly does not seek the issuance of a divorce decree or alimony. In five of six claims (Counts I-II and IV-VI) Matusow seeks damages, and the remaining count

---

do not have jurisdiction in domestic relations suits *except* where necessary to the effectuation of prior state court judgments involving the same matters." *Id.* at 1024. That formulation of the exception, however, was broader than the Supreme Court's in *Ankenbrandt* and *Marshall*. Thus, to the extent that *Solomon* conflicts with the subsequent rulings of the Supreme Court, it has been abrogated.

14

(Count III) is an action to quiet title. The claims for which Matusow seeks damages sound in tort, and, as such, they clearly fall outside of the domestic relations exception. Matusow claims that Trans-County was negligent in conducting a title search and writing a title insurance policy (Count I). She further contends that Trans-County violated New Jersey Statute, § 17:46B-9 by issuing a title insurance policy without conducting a reasonable examination of the title (Count II), and that the Sheriff violated several New Jersey Statutes[6] in the foreclosure sale of the Winston property (Count IV). These are statutory tort claims, and, as such, they do not fall within the domestic relations exception. Count V is a fraudulent representation claim against Linderman, and Count VI is a conspiracy to

---

[6]    *See supra* note 3.

15

commit fraud claim against Linderman, Lyle, and Rose.[7]
Because Matusow seeks damages in these five tort claims and
not the issuance of a divorce or alimony decree, federal diversity
jurisdiction is "proper in this case." *Ankenbrandt*, 504 U.S. at
704.

Matusow also brings a quiet title action against Kim
(Count III). While this claim sounds in property and not tort, it
also does not involve the issuance of a divorce or alimony
decree. Matusow asks the district court to invalidate the title
between Rose and Kim and establish her title to the property.
Such a result would not affect the Judgment and Agreement
between Matusow and Lyle. It would establish only that
Matusow *currently* has an interest in the property. A state court,

---

[7] Civil fraud is also a tort. Black's Law Dictionary 685 (8th ed. 2004) ("Fraud is usu. a tort, but in some cases (esp. when the conduct is willful) it may be a crime.").

16

in an enforcement proceeding, could still find that Matusow is in violation of the Judgment and Agreement due to her failure to transfer her title and interest to Lyle and order her compliance. Thus, federal diversity jurisdiction over Matusow's quiet title claim is proper, as well.

Appellees contend that Matusow seeks a "modification" of the divorce decree, which, they argue, is also foreclosed by *Ankenbrandt*. *Id.* at 701-02 ("The *Barber* Court [] did not intend to strip the federal courts of authority to hear cases arising from the domestic relations of persons unless they seek the granting or modification of a divorce or alimony decree."). We agree that the modification of a divorce decree is analogous to the issuance of a divorce decree. Matusow does not, however, seek a modification of the Judgment and Agreement to which she and Lyle are bound.

Matusow concedes that the Judgment and Agreement

17

require her to transfer her title and interest in the Winston property to Lyle. In none of her claims, however, does she ask the court to alter the Judgment and Agreement nor does she contest their validity. Matusow alleges (1) that she never transferred her interest in the Winston property to Lyle, and (2) that, as an owner of the property, she was injured by the allegedly fraudulent and illegal transfer of the property.[8] She seeks damages from Trans-County, the Sheriff, Linderman, Lyle, and Rose, and, she brings an action to quiet title. Even if Matusow prevailed on all of her claims in federal court, the Judgment and Agreement would remain intact and enforceable in state court. Therefore, Matusow does not seek the modification of a divorce decree, and the narrow domestic

---

[8] We express no opinion as to the merits of Matusow's claims or the validity of her factual allegations, including her allegation that she never signed a deed transferring her interest in the Winston property to Lyle.

18

relations exception does not divest the federal court of jurisdiction over her claims.

Moreover, Matusow's claims do not implicate the policy concerns that support the application of the domestic relations exception. The Court in *Ankenbrandt* explained that the issuance of divorce, alimony, and child custody decrees often require a court to retain jurisdiction past a case's completion and appoint social workers to ensure compliance. 504 U.S. at 703-04. State courts are better suited for this work because of the relationship they have with the relevant state agencies. *Id.* at 704. Additionally, the Court recognized the "special proficiency" of the state court to handle divorce, alimony, and child custody decrees. *Id.* None of these policy considerations are implicated by Matusow's claims. No court oversight would be necessary; no state agency would be helpful in enforcing the court's decision; and state courts have no "special proficiency"

19

in handling Matusow's tort claims and action to quiet title. *See DiRuggiero v. Rodgers*, 743 F.2d 1009, 1020 (3d Cir. 1984) (holding that the domestic relations exception did not bar the plaintiff's tort claim because continuing supervision by a state agency was unnecessary and federal district courts are familiar with applying state tort law).

Finally, five of the six counts are against persons other than Lyle and thus against individuals and entities that are not parties to the Judgment and Agreement. The domestic relations exception generally does not apply to third parties. *Stone v. Wall*, 135 F.3d 1438, 1441 (11th Cir. 1998); *see also Ankenbrandt*, 504 U.S. at 704 n.7 (finding that the domestic relations exception did not apply to the plaintiff's tort claims against a third party). This is so because suits against third parties do not generally involve the issuance or modification of a divorce, alimony, or child custody decree. Matusow's case is

20

no exception. None of the Appellees, with the exception of Lyle, were parties to the Judgment and Agreement, and the claims against them (Counts I-V) are also external to the Judgment and Agreement.

The domestic relations exception is a *narrow* exception; it does not divest the federal court of jurisdiction to hear Matusow's claims against third parties.

### III. Abstention

Alternatively, the District Court also noted that it would have abstained pursuant to *Burford* and *Younger*.[9] We employ a two-step process when reviewing a district court's decision to abstain from exercising its jurisdiction. "[O]ur review of the underlying legal questions is plenary, but we review the decision to abstain for abuse of discretion." *Chiropractic Am. v.*

---

[9] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *Younger v. Harris*, 401 U.S. 37 (1971).

21

*Lavecchia*, 180 F.3d 99, 103 (3d Cir. 1999) (explaining the standard with regard to *Burford* abstention); *see also Marran v. Marran*, 376 F.3d 143, 154 (3d Cir. 2004) ("We exercise plenary review over the question of whether the elements required for [*Younger*] abstention exist. If all of the elements are present, we review the District Court's decision to abstain for abuse of discretion.") (internal citation omitted).

"The purpose of *Burford* is to 'avoid federal intrusion into matters of local concern and which are within the special competence of local courts.'" *Hi Tech Trans, LLC v. New Jersey*, 382 F.3d 295, 303-04 (3d Cir. 2004) (quoting *Chiropractic Am.*, 180 F.3d at 104). We employ a "'two-step analysis'" when determining the propriety of abstention under *Burford*. *Id.* at 304 (quoting *Riley v. Simmons*, 45 F.3d 764, 771 (3d Cir. 1995)). First, we ask "'whether timely and adequate state law review is available.'" *Id.* (quoting *Riley*, 45 F.3d at

22

771).  If such review is available, we "'determine if the case . . . involves difficult questions of state law impacting on the state's public policy or whether the district court's exercise of jurisdiction would have a disruptive effect on the state's efforts to establish a coherent public policy on a matter of important state concern.'"  *Id.* (quoting *Riley*, 45 F.3d at 771).

*Burford* does not permit abstention in this case because Matusow's claims do not involve any difficult questions of state law or implicate any complex state policies.   Nor will Matusow's claims have any impact on the public policy concerns of the State of New Jersey.  *Cf. Chiropractic Am.*, 180 F.3d at 105-06 (affirming dismissal under *Burford* abstention principles where plaintiffs challenged the constitutionality of New Jersey's automobile insurance regulations).  Thus *Burford* abstention is clearly inappropriate in Matusow's case.

*Younger* abstention is appropriate only if "'(1) there are

ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims.'" *Marran*, 376 F.3d at 154 (quoting *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989)).  In the present case, there are no on-going state proceedings.  The state fraudulent transfer of property case concluded in early 2006, before Matusow filed the present suit in November 2006.  The state enforcement proceeding between Lyle and Matusow concluded on October 16, 2006.  *Younger* abstention cannot be invoked in the absence of any on-going state proceedings.  *See Ankenbrandt*, 504 U.S. at 705; *Marran*, 376 F.3d at 155 ("When there are no pending state proceedings, *Younger* abstention is inappropriate.") (citation omitted).

Because neither the *Burford* nor *Younger* abstention doctrines is properly invoked as to Matusow's claims, the

District Court must exercise its jurisdiction over Matusow's diversity suit.

## IV. Conclusion

"[T]he federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Ankenbrandt*, 540 U.S. at 705 (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Matusow's claims do not fall within the narrow domestic relations exception to diversity jurisdiction; neither does any abstention doctrine permit the District Court to decline to exercise its jurisdiction. Accordingly, we must reverse the decision of the District Court and remand for further proceedings consistent with this opinion.

25