**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4255
_____

EDWIN R. JONAS III;
BLACKTAIL MOUNTAIN RANCH CO., LLC, a
Nevada Limited Liability Company
Appellants

v.

NANCY D. GOLD, ESQ., LINDA B JONAS; CHARNEY, CHARNEY &
KARAPOUSIS, P.A.; ADLER, SACHAROW, GOLD, TAYLOR, KEYSER &
HAGNER, A Professional Corporation

On Appeal from the United States District Court
for the District of New Jersey
(No. 1-13-cv-02949)
District Judge:  Hon. Joseph H. Rodriguez
Submitted Pursuant to Third Circuit LAR 34.1(a)
September 16, 2015

Before:  FISHER, CHAGARES, and JORDAN, <u>Circuit Judges</u>.

(Filed: September 23, 2015)
_____

OPINION[*]
_____

CHAGARES, <u>Circuit Judge</u>.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

This appeal is Edwin Jonas III's latest attempt — in a series of cases spanning twenty-five years and invoking the jurisdiction of several state and federal courts — to avoid paying alimony and child support. Before the United States District Court for the District of New Jersey, Edwin brought common-law fraud and § 1983 claims against his ex-wife, Linda Jonas, and her divorce lawyer, Nancy Gold. Edwin also brought legal malpractice and conversion claims against Gold and the law firms of Charny, Charny, & Karapousis, P.A. ("Charny") and Adler, Sacharow, Gold, Taylor, Keyser, and Hanger, P.C. ("Adler"). In an order dated September 30, 2014, the District Court dismissed all claims against Linda and Gold and granted summary judgment in favor of Charny and Adler.[1] For the following reasons, we will affirm.

I.

Because we write solely for the benefit of the parties, we will only briefly summarize the facts relevant to our decision. Edwin and Linda Jonas divorced in 1990. Edwin repeatedly failed to meet his support obligations, and a New Jersey Superior Court imposed a constructive trust with Linda as trustee and Gold as custodian. In 2002, Edwin moved in Florida state court to set aside a judgment for unpaid alimony on grounds of negligence and conversion, alleging that Linda and Gold had misappropriated trust assets. See Appendix ("App.") 93. That case was dismissed for lack of subject matter jurisdiction. (Ex. to Decl. of Edwin R. Jonas III Opp. Motions on the Pleadings & Summary Judgment, Docket No. 48 ("Jonas Decl."), at 64-65).

---

[1] The District Court also denied Edwin's cross-motions for summary judgment and Linda Jonas's motion for Edwin to be declared a vexatious litigant.

In May 2006, the New Jersey Superior Court Chancery Division entered a judgment against Edwin for unpaid child support, alimony, and other obligations. In a separate judgment, it applied the fugitive disentitlement doctrine and dismissed Edwin's cross-motions for relief, based on alleged misappropriations of trust funds, until such time as Edwin posted a bond to cover outstanding judgments and appeared personally in New Jersey court. The Appellate Division affirmed the judgments. Jonas v. Jonas, No. FM-04-259-89, 2008 WL 239069, at *2 (N.J. Super. Ct. App. Div. Dec. 29, 2008).

Linda domesticated, or obtained recognition of, the May 2006 judgment for unpaid alimony and child support in Florida and Montana. Edwin opposed her attempts to enforce the judgment in those jurisdictions, alleging that the judgment was obtained by fraud in that Linda and Gold denied having misappropriated trust funds.

Following the unfavorable termination of several of his suits, Edwin brought this putative fraud, malpractice, and civil rights action. The District Court dismissed all claims for failure to comply with the statute of limitations and for lack of jurisdiction.[2] It

---

[2] In a footnote, the District Court found the domestic relations exception to diversity jurisdiction also barred Edwin's suit. "The modern rule, as expressed in Ankenbrandt, provides 'that the domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree.'" Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 245 (3d Cir. 2008) (quoting Ankenbrandt v. Richards, 504 U.S. 689, 704 (1992)); see also Marshall v. Marshall, 547 U.S. 293, 308 (2006) ("[O]nly 'divorce, alimony, and child custody decrees' remain outside federal jurisdictional bounds.") (quoting Ankenbrandt, 504 U.S. at 704). While Edwin's suit affects rights held under child support and alimony orders, it does not explicitly seek modification of those orders. Several of Edwin's claims are against individuals and firms that were not parties to the domestic relations decrees. See Matusow, 545 F.3d at 247 ("The domestic relations exception generally does not apply to third parties."). We need not decide the issue, however, because the District Court's order can be affirmed on other grounds.

found that Edwin's claims were effectively an appeal from the May 2006 judgments —

an appeal which, under the Rooker-Feldman doctrine, the federal courts had no power to

hear. Jonas v. Gold, No. 13-cv-2949, 2014 WL 4854484, at *7-12 (D.N.J. Sept. 30,

2014). The District Court dismissed the malpractice claims for the additional reasons that

Edwin failed to allege circumstances that would allow him to bring a malpractice claim

against lawyers who did not represent him, id. at *9, and failed to submit an affidavit of

merit as required by New Jersey statute, N.J. Stat. Ann. § 2A:53A-26-29. Id. It

dismissed the § 1983 claims on the ground that none of the defendants were state actors.

Id. at *11-12. Edwin timely appealed.

## II.[3]

The Rooker-Feldman doctrine divests federal district courts of jurisdiction over

"cases brought by state-court losers complaining of injuries caused by state-court

judgments rendered before the district court proceedings commenced and inviting district

---

[3] The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1332(a). This Court has jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of a motion to dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 206 (3d Cir. 2009). In so doing, "[w]e take as true all the factual allegations of the [complaint] and the reasonable inferences that can be drawn from them, . . . but we disregard legal conclusions and recitals of the elements of a cause of action, supported by mere conclusory statements." Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (quotation marks omitted). "[W]hen the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the claim has "facial plausibility" and the complaint will survive the defendant's motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). We review grants of summary judgment de novo, Montone v. City of Jersey City, 709 F.3d 181, 189 (3d Cir. 2013), viewing the facts in the light most favorable to the non-moving party and affirming only where the moving party has established there is no genuine dispute as to any material fact. Burton v. Teleflex, Inc., 707 F.3d 417, 425 (3d Cir. 2013).

court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The doctrine "arises from 28 U.S.C. § 1257 which states in relevant part that '[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court.'" In re Knapper, 407 F.3d 573, 580 (3d Cir. 2005) (quoting 28 U.S.C. § 1257). "Since Congress has never conferred a similar power of review of the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions . . . ." Id. The Rooker-Feldman doctrine thus precludes federal district courts from hearing cases "if the federal claim was actually litigated in state-court prior to the filing of the federal action or . . . if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state-court was wrong." Id. at 581. "State and federal claims are inextricably intertwined '(1) when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered [or] (2) when the federal court must . . . take action that would render [the state court's] judgment ineffectual.'" ITT Corp. v. Intelnet Intern. Corp., 366 F.3d 205, 211 (3d Cir. 2004) (quoting Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 421 (3d Cir. 2003) (quotation marks omitted)).

A.

Edwin's primary argument on appeal is that the monetary judgment entered in May 2006 was not final because it was a default judgment entered without prejudice. He relies on the Superior Court's instruction, echoed by other New Jersey courts, that his

5

motions could be heard if he posted a sufficient bond and appeared personally in New Jersey.  See Jonas v. Jonas, 2008 WL 239069, at *2 (N.J. Sup. Ct. App. Div. Jan. 30, 2008).

Edwin previously litigated this precise issue before the United States District Court for the District of Montana.  That District Court found that the New Jersey judgments were final.  Jonas v. Jonas, No. 13-cv-90, 2014 WL 978099, at *5 (D. Mont. Mar. 12, 2014).  Perhaps realizing that collateral estoppel could preclude this Court from revisiting the Montana District Court's finding on the issue, Edwin argues that a federal district court sitting in Montana is not entitled to deference on the subject of the finality of New Jersey judgments.[4]  This argument reflects a misunderstanding of the doctrine of collateral estoppel.  But even if we were to review the finality of the 2006 judgments de

_____

[4] Edwin also claims that the District Court erred in taking judicial notice of several prior opinions in this interminable saga, including the Montana District Court decision, because those opinions contained, in his view, various errors of law and fact.  He further claims that the District Court violated his due process rights by failing to give him a hearing on his objection to the defendants' request for judicial notice.  Both of these contentions are meritless.  The District Court was entitled to take judicial notice of prior opinions to establish the procedural history of the case, see Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999) (holding that courts "may take judicial notice of [other courts'] opinion[s]—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity"), which revealed, among other things, that the finality issue was already litigated.  The District Court added that were it to consider the issue de novo, it would agree with the prior analysis anyway.  See Jonas v. Gold, 2014 WL 4854844, at *2 n.6 (D.N.J. Sept. 30, 2014).  As to Edwin's due process argument, Federal Rule of Evidence 201(e) does not require a formal hearing but an opportunity to be heard.  See United States v. Mitchell, 365 F.3d 215, 251 n.28 (3d Cir. 2004) (finding Rule 201(e) was satisfied when Defendant was heard as to propriety of taking judicial notice in the course of a Daubert hearing).  Edwin received such an opportunity at a hearing on July 29, 2014.  (See Tr. of Hr'g dated July 29, 2014 at 35 (listing Jonas's demand for hearing under 201(e) among the topics of the hearing)).  The District Court committed no errors in connection with its use of judicial notice.

novo, we would agree with United States District Court for the District of Montana. Inviting Edward to renew his challenge under specified conditions did not render the 2006 judgment non-final. Otherwise, Linda's ability to enforce her judgment would depend on Edwin making an unlikely appearance in New Jersey Superior Court. Edwin in fact appealed the 2006 judgments, and the Appellate Division affirmed. Jonas v. Jonas, 2008 WL 239069, at *2 (N.J. Sup. Ct. App. Div. Dec. 29, 2008). Moreover, after the Appellate Division ruled against him, Edwin filed motions to vacate several orders, including the 2006 judgment. The Superior Court denied these motions, the Appellate Division affirmed, and the New Jersey Supreme Court denied certification. See Jonas v. Jonas, 210 N.J. 109 (2012). Edwin subsequently conceded in a Montana Bankruptcy action that "[a]ll appellate avenues in New Jersey have been exhausted and no further appeals are possible." In re Jonas, 2012 WL 2921016, at *1 (Bankr. D. Mont. July 17, 2012). We agree that "[f]or all intents and purposes, [the 2006 judgments] are final judgments." Jonas v. Jonas, 2014 WL 978099, at *5 (D. Mont. Mar. 12, 2014).

B.

Edwin's secondary argument against the application of Rooker-Feldman is that his current suit is not inextricably intertwined with the 2006 judgment. In particular, he insists that this suit does not concern state-court judgments but rather independent frauds committed to obtain them. But even without identifying the state-court judgment as his injury, the fact remains that Edwin's claims of misappropriation of trust funds are the same ones he brought before the New Jersey Superior Court, and hearing those claims would require us to nullify the Superior Court's application of the fugitive disentitlement

7

doctrine. Because Edwin's requested relief would "render [the state court's judgment] ineffectual," Desi's Pizza, 321 F.3d at 421 (quotation omitted) (alteration in original), the claims are inextricably intertwined, and we are divested of jurisdiction.

III.

Edwin argues that the District Court's application of the statute of limitations was in error because he did not have actual knowledge of the defendants' fraud until 2008 and the statute of limitations should have been equitably tolled under the doctrine of fraudulent concealment.

Under New Jersey law, the statute of limitations for personal injury tort claims is two years. N.J. Stat. Ann. § 2A: 14-2.[5] The statute of limitations for tortious injury to real or personal property is six years. N.J. Stat. Ann. § 2A: 14-1. The injuries alleged in Edwin's Complaint arose, at the latest, from the judgment in May 2006. This suit was filed in May 2013. Therefore, unless some basis for tolling applies, Edwin's claims are untimely.

The discovery rule postpones the accrual date of a cause of action "until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." Lopez v. Swyer, 300 A.2d 563, 565 (N.J. 1973). Here, Edwin has been alleging fraud and misappropriation of trust funds against Linda and her attorneys since at least 2002. (See Jonas Decl., at 41-44

---

[5] This statute applies to § 1983 claims as well. Cito v. Bridgewater Twp. Police Dept., 892 F.2d 23, 25 (3d Cir. 1989) ("The statute of limitations for any Section 1983 claim is the state statute which limits actions for personal injuries. In New Jersey that statute is N.J. Stat. Ann. § 2A:14-2. . . ." (internal quotation marks and citations omitted)).

(alleging that Linda misappropriated and squandered trust assets and that Gold breached her fiduciary duty by disbursing funds to Linda without authorization)); see also App. 94 (describing the suit above).  He made similar accusations in his cross-motions during the New Jersey enforcement action in 2006.  Even if, as the Complaint alleges, Gold only confirmed the fraud in 2008, App. 53, Edwin was aware of the basis for his claim long before that.  The cause of action was not newly discovered.

For the same reason, Edwin cannot make out a case for equitable tolling.  "Unlike the discovery rule which suspends the limitation period because the plaintiff is unaware of [his cause of action], equitable tolling of a statute of limitations occurs . . . 'where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'"  Villalobos v. Fava, 775 A.2d 700, 707 (N.J. Super. Ct. App. Div. 2001) (quoting Dunn v. Borough of Mountainside, 693 A.2d 1248, 1258 (N.J. Super. Ct. App. Div. 1997)).  Edwin's extensive litigation history demonstrates that, for better or worse, he has never been induced to believe he lacked a cause of action.  Cf. Forbes v. Eagleson, 228 F.3d 471, 487 (3d Cir. 2000) (the doctrine of fraudulent concealment requires a plaintiff to "show that he actually was 'mis[led] . . . into thinking that he d[id] not have a cause of action.'" (quoting Davis v. Grusemeyer, 996 F.2d 617, 624 (3d Cir.1993))).  Edwin's claims are all time-barred.[6]

---

[6]  Because we conclude that Edwin's claims are barred by Rooker-Feldman and the statute of limitations, we need not reach the appellees' argument that Edwin's malpractice claims fail for lack of a certificate of merit.  Nor do we need to reach the substance of Edwin's § 1983 claims.  We note, however, that Edwin cites no authority for the proposition that the court-appointed trustee of a private trust is, ipso facto, a state actor.

9

## IV.

For the foregoing reasons, we will affirm the order of the District Court.