**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1596
_____

OLIVER VAUGHN:DOUCE, Al Dey Consul Inpropria Persona, Sui Juris
Appellant

v.

NEW JERSEY DIVISION OF CHILD PROTECTION AND PERMANENCY;
MADELIN F. EINBINDER; KERI POPKIN; MELISA H. RASKA; MICHELE
SCENNA; MORGAN KOWSKY; ALEXIS POLLOCK; KEITH MILLER; CARINA
SHORTINO; PAMELA PETERSON; KENNETH MCTIGUE; DR. PUGLIA; LORI
LESSIN, PSY; DEPARTMENT OF CHILDREN AND FAMILIES; TOMS RIVER
HOSPITAL
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3:20-cv-02619)
District Judge: Honorable Michael A. Shipp
_____

Submitted pursuant to Third Circuit LAR 34.1(a)
August 4, 2021
Before: CHAGARES, PHIPPS, and COWEN, Circuit Judges

(Opinion filed: August 4, 2021)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Appellant Oliver Vaughn:Douce, proceeding pro se, appeals from the order dismissing his action in the District Court for lack of subject-matter jurisdiction. We will affirm.

Appellant, a New York resident, initiated this action in the District Court by filing a document nominally requesting a writ of habeas corpus pursuant to 28 U.S.C. §§ 2242 and 2243, purportedly on behalf of his minor daughter. He alleged that in June 2019, having not heard from his daughter's mother in over a year, he investigated and learned that the mother had died in October 2018. He then tried to locate his daughter, who was eight years old at the time, and discovered that Defendant New Jersey Division of Child Protection and Permanency ("NJDCPP"), had put her in a temporary living placement. According to Appellant's allegations and filed exhibits, immediately following the mother's death, NJDCPP conducted an investigation and, as part of that investigation, attempted to contact Appellant, but was unsuccessful in those attempts. The investigation noted that efforts would be made to contact him and other available relatives who could be assessed for possible placement for the child. Days after the mother's death, NJDCPP filed a complaint in state court naming both parents as defendants and requesting an order granting NJDCPP care and custody of the child on account of parental neglect. The complaint noted that Appellant's whereabouts were unknown and that NJDCPP was trying to contact him. Appellant eventually became aware of the proceedings and began litigating in state-court, representing himself. Following a January 2020 permanency

2

hearing, a state court accepted a plan of termination of Appellant's parental rights and determined that adoption was appropriate and acceptable for the child.[1] The order further stated that the child would continue in a placement outside the home, and that by a date in March 2020, NJDCPP should file to terminate Appellant's parental rights, and file for its own kinship legal guardianship or arrange to have the adoption complaint filed with the court by a date certain. Appellant thereafter filed a motion for leave to file an interlocutory appeal, which NJDCPP opposed in February 2020. It is unclear if and how that motion was resolved, or whether the proceedings have concluded. Another exhibit filed by Appellant, dated May 12, 2020, stated that a case management conference in preparation for trial had been scheduled for June 25, 2020.

In this case, which Appellant initiated in March 2020, Appellant alleged that his daughter was being held in an "illegal action for private financial gain" by NJDCPP, which was holding her "for ransom, attempting to use [a] psychologist to fabricate a report to the[ir] benefit to prolong, in order to assure[] the[ir] profit." Appellant appeared to attempt to bring state-law claims, as well as federal constitutional claims. In his initial filing, and subsequent filings, he requested injunctive relief in the form of custody of his daughter. In one filing he also indicated that he was seeking $20 million in damages.

---

[1] The state-court order provided by Appellant references a section of the order that provides the rationale for its decision; however, Appellant appears to have omitted the page of the order containing that section.

The District Court screened the case pursuant to 28 U.S.C. § 1915 and dismissed the action for lack of jurisdiction. The District Court held in the alternative that if it did have jurisdiction, the Court would have abstained from hearing the case, pursuant to Younger v. Harris, 401 U.S. 37 (1971).

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and we exercise plenary review over the District Court's dismissal of Appellant's action for lack of subject-matter jurisdiction, see Freidrich v. Davis, 767 F.3d 374, 377 (3d Cir. 2014), and also exercise plenary review over the question whether the requirements for abstention have been satisfied, see Miller v. Mitchell, 598 F.3d 139, 145-46 (3d Cir. 2010). We may affirm the court's decision on any basis supported by the record. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

As the District Court concluded, to the extent that Appellant sought habeas relief for his daughter, the Court lacked jurisdiction because placement in foster care does not qualify as "custody" for purposes of habeas corpus jurisprudence. Cf. Lehman v. Lycoming Cnty. Children's Servs. Agency, 458 U.S. 502, 510-11 (1982).

The District Court also concluded that, to the extent Appellant brought civil rights claims challenging state-court decisions regarding parental, custodial, and related rights, the Court lacked subject-matter jurisdiction over those claims pursuant to the domestic relations exception. "The Supreme Court has long recognized a domestic relations exception to federal diversity jurisdiction." Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 245 (3d Cir. 2008) (citing Ankenbrandt v. Richards, 504 U.S. 689,

4

693-94 (1992)). This exception encompasses "cases involving the issuance of a divorce, alimony, or child custody decree." Ankenbrandt, 504 U.S. at 704.

To the extent that these claims were brought under state law and sought to invoke the District Court's federal diversity jurisdiction, see 28 U.S.C. § 1332, we agree with the District Court that the claims would be barred by the domestic relations exception because Appellant asserted them as a means to challenge child-custody proceedings and decisions in state court, see Matusow, 545 F.3d at 244-45.

However, we have held that, "[a]s a jurisdictional bar, the domestic relations exception does not apply to cases arising under the Constitution or laws of the United States." See McLaughlin v. Pernsley, 876 F.2d 308, 312-13 (3d Cir. 1989) (internal citation and quotation marks omitted). Thus, to the extent that Appellant's claims alleged federal constitutional violations, which invoke federal question jurisdiction, see 28 U.S.C. § 1331, the District Court erred in concluding that the claims were barred by the domestic relations exception.

As noted, the District Court alternatively concluded that it would abstain under Younger in light of the ongoing state-court proceedings. Younger abstention dictates that "[w]hen there is a parallel state criminal proceeding, federal courts must refrain from enjoining the state prosecution." Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72 (2013). In Sprint, the Supreme Court noted that Younger has been extended to certain "civil enforcement proceedings," and cited as an example a case involving "state-initiated proceedings to gain custody of children allegedly abused by their parents". See id. at 79

5

(citing <u>Moore v. Sims</u>, 442 U.S. 415, 419-20 (1979)).  Because Appellant's allegations and state-court exhibits establish that NJDCPP, a state agency, conducted an investigation and initiated the proceedings by filing a formal complaint against him to terminate his parental rights in favor of NJDCPP as legal guardian for purposes of pursuing adoption for the child, we agree that this case falls within the civil-enforcement-proceedings extension of <u>Younger</u> abstention.  <u>Cf.</u> <u>id.</u> at 80 (rejecting the application of <u>Younger</u> and noting that a private corporation, rather than the state, initiated the action, and that no state authority conducted an investigation or lodged a formal complaint).  Therefore, we will affirm.